In the Matter of ATLANTA INTER-NATIONAL RACEWAY,
INC., Bankrupt.

SECURITY NATIONAL BANK,
Appellant,

v.

Stacey W. COTTON, Trustee, Appellee.

No. 74–2787.

United States Court of Appeals,
Fifth Circuit.

May 22, 1975.

Frank B. Wilenskey, Richard P. Kessler, Jr., Morris W. Macey, Atlanta, Ga., for appellant.

R. Neal Batson, Atlanta, Ga., for Trustee.

Stacey W. Cotton, Atlanta, Ga., for appellee.

Heyman & Sizemore, Atlanta, Ga., Irving Picard, Securities & Exchange Comm., Washington, D. C., for other interested parties.

Before GIBSON,* THORNBERRY and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

This appeal presents for review the question whether a provision for attorney's fees in a promissory note can be enforced in a Chapter X reorganization proceeding under the Bankruptcy Act when the creditor has not attempted to fulfill the preconditions to validity of a lien for such fees until after the Chapter X petition has been filed, and in the face of a prohibitory injunction against the enforcement of all liens on the bankruptcy estate. The District Court answered this question in the negative. We affirm.

## I. Factual Background

On March 24, 1969, Atlanta International Raceway, the bankrupt debtor, executed a promissory note for $1,000,000 to Michigan International Speedway, Inc. A deed to secure debt, to the raceway's property, was also executed. As to attorney's fees, the note provided that

> Should this note, or any part of the indebtedness evidenced hereby be collected by law or through an attorney at law, the holder shall be entitled to collect attorney's fees in an amount equal to ten per cent (10%) of the principal and interest, and all costs of collection.

On March 30, 1970, the note and deed were transferred and assigned to the Royal National Bank of New York. Security National Bank is that bank's successor in interest to the note and deed to secure debt.

On January 18, 1971, a petition for reorganization of Atlanta International Raceway was filed and approved under Chapter X of the Bankruptcy Act. Under Section 148 of the Act, 11 U.S.C. § 548, the order approving the petition operated as an automatic stay of mortgage foreclosure proceedings and of any act or proceeding to enforce a lien against the debtor's property.[1] The District Court, pursuant to Section 116(4) of the Act, 11 U.S.C. § 516(4),[2] immediately entered an injunction prohibiting all creditors and their attorneys from prosecuting any suit or doing any act to enforce claims against the bankrupt debtor.[3] The promissory note for

---

* Of the Eighth Circuit, sitting by designation.

1. Section 148 provides:

Until otherwise ordered by the judge, an order approving a petition shall operate as a stay of a prior pending bankruptcy, mortgage foreclosure, or equity receivership proceeding, and of any act or other proceeding to enforce a lien against the debtor's property.

2. Section 116(4) provides:

Upon approval of a petition, the judge may, in addition to the jurisdiction, powers, and duties in this chapter conferred and imposed upon him and the court—

(4) In addition to the relief provided by section 29 of this title, enjoin or stay until final decree the commencement or a continuation of a suit against the debtor or its trustee or any act or proceeding to enforce a lien upon the property of the debtor.

3. The District Court's injunction stated, in relevant part:

[U]ntil Final Decree or Order of this Court, all creditors and stockholders, all Sheriffs, Marshals and other court officers, and their respective attorneys, servants, agents and employees, and all other persons, firms and corporations be, and they hereby are, jointly and severally, enjoined and stayed from commencing or continuing any action at law or suit or proceeding in equity against debtor and in any Court, or from executing or issuing or causing the execution or issuance out of any Court of any writ, process, summons, attachment, subpoena or execution, or exercising any powers of sale, with or with-

$1,000,000 above referred to was not then in default in payments of principal or interest.

On August 4, 1972, during the pendency of the Chapter X proceedings, attorneys for the bank sent the raceway and the Chapter X trustee a ten-day letter, which declared the note to be in default. The letter demanded payment and stated

> This letter is written pursuant to Georgia Code Section 20–506 to advise that the principal and interest as stated above may be paid within ten (10) days from receipt of this notice without liability for attorney's fees. In the event the principal and interest as stated above is not paid within ten (10) days from receipt of this notice, the provisions of said promissory note relative to the payment of attorney's fees shall be enforced.

out judicial process, or other process for the purpose of impounding or taking possession of or interfering with or enforcing a lien upon or foreclosing upon any property owned or in the possession of debtor, or a trustee hereafter appointed, or exercising any powers of sale as to any property heretofore seized or attached, with or without judicial process, and from doing any act or thing whatsoever to interfere with the possession or management by debtor, or a trustee hereafter appointed, of the property and assets of the within estate, or to interfere in any manner during the pendency of this proceeding with the exclusive jurisdiction of this Court over debtor and its property, wherever located; and all persons, firms or corporations owning any lands or buildings occupied by debtor or wherein is contained any property of the within estate be, and they hereby are, jointly and severally stayed, pending the further order of this Court, from removing or interfering with any such property; . . . .

**4.** Section 20–506 provides:

Attorney's fees in notes, etc., in addition to interest.—
Obligations to pay attorney's fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable, and collectible' as a part of such debt, if such note or other evidence of indebtedness be collected by or through an attorney after maturity, subject to the following provisions:

.        .        .        .        .

(c) The holder of the note or other evidence of indebtedness, or his attorney at

Under Georgia law a lien for attorney's fees is not valid until this notice and opportunity to pay have been provided to the debtor. Ga.Code Ann. § 20–506.[4]

The letter was received by the trustee on August 7, 1972, and on August 11 the bank applied to the bankruptcy court for permission to foreclose. The ten-day period elapsed without payment of the debt. The bank then moved for summary judgment on its claim for attorney's fees, amounting to over $120,000, which motion was denied by the District Court. The bank has appealed from this adverse decision.

## II. Enforceability of the Claim for Attorney Fees in the Chapter X Proceeding

■■ The validity of the bank's lien for attorney's fees is a question of Georgia law.[5] The enforceability of the lien

law, shall, after maturity of the obligation, notify in writing the maker, indorser or party sought to be held on said obligation that the provisions relative to payment of attorney's fees in addition to the principal and interest shall be enforced and that such maker, indorser or party sought to be held on said obligation has 10 days from the receipt of such notice to pay the principal and interest without the attorney's fees. If the maker, indorser or party sought to be held on any such obligation shall pay the principal and interest in full before the expiration of such time, then the obligation to pay the attorney's fees shall be void and no court shall enforce the agreement.

(d) Obligations to pay attorney's fees contained in security deeds and bills of sale to secure debt shall be subject to provisions of this section where applicable. (Acts 1890–1, p. 221; 1900, p. 53; 1946, pp. 761, 766; 1953, pp. 545, 546; 1957, p. 264.)

**5.** In Strickland v. Williams, 1959, 215 Ga. 175, 109 S.E.2d 761, the Supreme Court of Georgia held invalid a lien for attorney's fees that a creditor tried to enforce after the filing of a petition for the appointment of a receiver under state law to liquidate the debtor's assets. The state court had entered an injunction prohibiting creditors from "instituting, filing, or prosecuting any suits, bills, attachments, garnishments or other proceedings of whatever kind against the petitioner or any property or assets of his . . . ." The creditor subsequently sent substantially the same ten-day letter sent in the present case, which, under Georgia law, is a precondition to the validity of the lien for attorney fees. Ga.Code Ann.

in a Chapter X proceeding, however, is a question of federal bankruptcy law. Security Mortgage Co. v. Powers, 278 U.S. 149, 153–154, 49 S.Ct. 84, 85–86, 73 L.Ed. 236 (1928). We conclude that enforcement of the bank's attorney fee lien in this Chapter X proceeding would frustrate the District Court's efforts to fulfill its responsibilities under the Act and would be inconsistent with the purposes of Chapter X. The bank does not contend that attorney's fees of $120,000 have been earned herein. What the bank seeks, therefore, is a $120,000 windfall to be added to its debt, all as a consequence of the debtor being in Chapter X reorganization proceedings in bankruptcy.

**A. Conflicts between Enforcement of the Claim for Attorney Fees and the Purpose of Chapter X**

The bank's ten-day letter was sent despite the federal court injunction clearly forbidding the enforcement of creditors' rights against the debtor. The sending of the demand letter was an "act or proceeding to enforce a lien upon the property of the debtor," 11 U.S.C. § 516, and fell within the terms of the District Court's prohibitory injunction. The court's injunction was entirely proper,[6] and was necessary to preserve the court's "exclusive jurisdiction of the debtor and its property, wherever located." 11 U.S.C. § 511. Without this protection of the debtor's assets, the court's efforts to develop a plan or reorganization would have been in vain.

Thus the trustee was confonted with two restraints against complying with the bank's demand for payment: first, the District Court's injunction, which, as the court below specifically found, could not have been changed within ten days to permit the payment, in light of the statutory requirements of notice to other creditors, court approval, etc.; second, the trustee's responsibility, as well as that of the District Court, to hold all such demands for payment in abeyance lest the bankrupt's prospects for reorganization be jeopardized by the loss of essential assets.

The debtor and its trustee therefore had no opportunity to satisfy the bank's demand for payment, and avoid incurring an additional $120,000 liability for attorney's fees. We conclude that it is contrary to the purpose of Chapter X to inflict this added expense on the debtor, and derivatively, on its other creditors.

The bank argues that it was not required to obey the court's injunction by applying for permission to send its ten-day letter, because its right to make the demand for payment is a substantive right sanctioned by state law.[7] As we

---

§ 20–506. The court concluded that, in light of the state court injunction, entered pursuant to the state receivership statute, Section 20–506 could not be interpreted to create a valid lien for attorney's fees when the preconditions to validity were not satisfied until after the filing of the receivership petition. We must doubt that the Georgia courts would conclude that Section 20–506 creates a valid lien when, as in this case, a similar injunction is entered by a federal court instead of a state court, pursuant to the Bankruptcy Act rather than a state receivership statute. Our resolution of the question whether the attorney's fee lien is enforceable in this Chapter X proceeding, however, makes it unnecessary for us to inquire further into the validity of the lien under Georgia law.

**6.** The Court's injunction issued pursuant to Section 116(4) of the Act, 11 U.S.C. § 516(4), was, as counsel for the bank stated at oral argument, a standard injunction of the sort entered in every Chapter X case. In constru-

ing Section 116(4) the Ninth Circuit recently stated

> The enforcement sought to be enjoined may be in the nature of a judicial proceeding or some non-judicial act or proceeding, for the words 'any act or proceeding' are all inclusive.

In re Thomas J. Grosso Investment, Inc., 9 Cir., 1972, 457 F.2d 168, 172 n. 6.

**7.** The case cited by the bank in support of this proposition is inapposite. In re Utilities Power & Light Corporation, 7 Cir., 1937, 91 F.2d 598, presented the question whether a secured creditor could enforce an acceleration clause in a loan agreement after the filing of a Chapter X proceeding. The reason for permitting acceleration in Chapter X proceedings is to present the trustee with the full amounts owing by the debtor to various secured and unsecured creditors, so that he can intelligently undertake a restructuring of the debtor's capital. Acceleration does not interfere with the reorganization, because the court still retains its

stated recently, however, in ruling on a utility company's claim in a Chapter X proceeding:

> If a creditor, like the telephone company, could continue to enforce his state law rights after the initiation of bankruptcy proceedings, the bankruptcy laws would be meaningless. Their very purpose is to suspend the normal operation of rights and obligations between the debtor and his creditors.

In re Fontainebleau Hotel Corporation, 5 Cir., 1975, 508 F.2d 1056, 1059.[8]

**B. Prior Interpretations of the Enforceability of Post-petition Contractual Claims for Attorney's Fees**

The bank's answer to the foregoing reasoning is that the present attorney's fee claim is controlled by two prior decisions, one by the Supreme Court and one by this court. These cases, however, are inapposite.

In Security Mortgage Co. v. Powers, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236 (1928), the Court held that a claim for attorney's fees pursuant to a provision in a note similar to the note in this case was enforceable in a bankruptcy proceeding. The creditor's demand notice was sent, after the petition was filed, to a debtor from whom the bankrupt had purchased the land securing the note. When the creditor filed his claim with the bankruptcy court, the debt (including an amount for attorney's fees) had already been reduced to judgment in a state court action against the original debtor. *Security Mortgage,* however, was a straight bankruptcy proceeding rather than a reorganization under Chapter X. The reorganization provisions of the Bankruptcy Act were not enacted until 1934, six years after the *Security Mortgage* case.[9] The Supreme Court has repeatedly stated that reorganization proceedings are *sui generis,* and rules appropriate in an ordinary bankruptcy may be inapplicable in a reorganization. *See* Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, 470 n. 3, 94 S.Ct. 2504, 2507, 41 L.Ed.2d 243 (1974); Continental Illinois Nat. Bank & T. Co. v. Chicago, Etc., Co., 294 U.S. 648, 676, 55 S.Ct. 595, 606, 79 L.Ed. 1110 (1935).

No prohibitory injunction was entered by the bankruptcy court in *Security Mortgage* against enforcement of secured creditors' liens against the debtor. Under the circumstances of that case there was no need to delay satisfaction of secured claims in contemplation of a reorganization. The purpose of the bankruptcy system was "to convert the assets of the bankrupt into cash for distribution among creditors, and then to relieve the honest debtor from the weight of oppressive indebtedness . . . ." Maynard v. Elliott, 283 U.S. 273, 277, 51 S.Ct. 390, 392, 75 L.Ed. 1028 (1931), quoting Williams v. U. S. Fidelity Co., 236 U.S. 549, 554, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915). *See* Young v. Higbee Co., 324 U.S. 204, 210, 65 S.Ct. 594, 597, 89 L.Ed. 890; Kuehner v. Irving Trust Co., 299 U.S. 445, 451, 57 S.Ct. 298, 301, 81 L.Ed. 340 (1937); Kothe v. R. C. Taylor Trust, 280 U.S. 224, 227, 50 S.Ct. 142, 143, 74 L.Ed. 382 (1930). That purpose was not subverted by the enforcement of secured claims against the debtor because the trustee and creditors were not restrained (as here) by an injunction

---

power to modify the secured creditors' rights, including their right to immediate payment under an acceleration clause. Thus if the court determines that immediate payment of the full amount of a secured creditor's claim would be inappropriate, the debt can be "decelerated" upon adoption of a plan of reorganization. *See* Guaranty Trust Co. of New York v. Henwood, 8 Cir. 1936, 86 F.2d 347; In re Plankington Bldg. Co., 7 Cir., 1945, 148 F.2d 119.

**8.** A variety of rights created by state law are commonly suspended by bankruptcy courts in order to serve the policies of the Act. *See, e.*

g., In re Schokbeton Industries, 5 Cir., 1971, 449 F.2d 321 (upholding injunction against termination of bankrupt licensee's rights under license agreement during period for curing breach of the agreement); In re Thomas J. Grosso Investment, Inc., 9 Cir., 1972, 457 F.2d 168 (upholding injunction against running of redemption period, ordinarily giving foreclosure purchaser clear title); In re Argyle-Lake Shore Bldg. Corporation, 7 Cir., 1935, 78 F.2d 491 (*id.*).

**9.** Act of June 7, 1934, 48 Stat. 911, 912, § 1.

or by the essential need to preserve the debtor's assets in a pending reorganization. The trustee's task was dismantling the debtor enterprise, rather than restructuring it for continued existence.[10] Under these circumstances a trustee would have an opportunity to comply with a secured creditor's demand for payment, and could legitimately be held responsible for additional contractually stipulated attorney's fees. In the present case, as the court below found, there was no such opportunity.[11]

In *Security Mortgage* the Court did not instruct the District Court to pay the attorney's fee claim, but rather remanded the case for a hearing on several unresolved issues. The Court stated that if the trustee had not received notice of the bank's demand for payment,[12] the claim for attorney's fees could not be enforced. The Court's discussion of that issue convinces us that for such a claim to be enforceable there must be an opportunity to comply with the creditor's demand for payment.

> For, if he had been notified, the trustee might have arranged to pay the note on or before the return date of the suit against the [debtor]. The purpose of the Georgia statute is clear. It is to protect the debtor, in spite of default, from any liability for attorney's fees, unless he fails to pay after the lapse of the ten days from receiving notice of intention to sue and such further time as must intervene between commencement of the suit and the return day. [citations omitted] The Legislature cannot have intended that the creditor should be able to impose the additional liability for attorney's fees without giving the real debtor the notice *and opportunity to pay* which the statute contemplated that a debtor should have.

278 U.S. at 158, 49 S.Ct. at 87. (emphasis added). *See* United States v. Hattaway, 5 Cir., 1974, 488 F.2d 55, 57.

The Supreme Court has considered the question whether, during a pending reorganization and in the face of an injunction, a trustee has sufficient opportunity to comply with a demand for payment, so as to render claims similar to attorney fees enforceable. In Vanston Bondholders Protective Com. v. Green, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946) the bankrupt debtor had issued mortgage bonds pursuant to an indenture agreement that provided for interest to be paid on any overdue interest coupons on the bonds. An equity receiver was appointed by the District Court, which concurrently enjoined the debtor and receiver from paying any pre-appointment debts. Thereafter the indenture trustee, acting on behalf of the bondholders, declared the entire principal due, because of the court-ordered default on the interest payments, and began accruing interest on the overdue interest. In disallowing the claim for interest on overdue interest, the Supreme Court stated:

> [W]hen the equity receivership intervened, these interrelated obligations

---

**10.** It is not clear that *Security Mortgage* has continuing vitality even in straight bankruptcy cases. Under the new Bankruptcy Rules, effective October 1, 1973, the automatic stay provision formerly found only in Chapters X and XII has now been extended to Chapter XI and straight bankruptcy proceedings as well. Bankruptcy Rule 601; Collier's Trustees' and Receivers' Handbook § 1.002[4].

**11.** Contractually stipulated attorney's fees have been awarded, based on enforcement efforts undertaken after the filing of the petition, in several straight bankruptcy proceedings. *See* In re Ferro Contracting Co., 3 Cir., 1967, 380 F.2d 116; In re American Motor Products Corporation, 2 Cir., 1938, 98 F.2d 774; In re Kashmir Refinishing Co., 2 Cir., 1938, 94 F.2d 652; Tawney v. Clemson, 4 Cir., 1936, 81 F.2d

300. The bank refers us to only two cases, however, in which contractual claims for attorney's fees were enforced in Chapter X proceedings. Both cases, unlike the present case, involved defaults declared before the filing of the Chapter X petition, and thus are inapposite. Webster Drilling Company v. Walker, 10 Cir., 1961, 286 F.2d 114; Brown v. Security Nat. Bank of Greensboro, 4 Cir., 1952, 200 F.2d 405.

**12.** The creditor had sent the demand letter to the original debtor, from whom the bankrupt had purchased the land, subject to the creditor's mortgage, described in the deed securing the original debtor's note. It was unclear whether the bankrupt's trustee had also received notice of the creditor's demand for payment.

were drastically changed. The obligation to make prompt payment of simple interest coupons was suspended. In fact both Inland [the debtor] and the receiver were ordered by the court not to pay the coupons on the dates they were, on their face, supposed to have been paid. The contingency which might have created a present obligation to pay interest on interest—i. e., a free decision by the debtor that it would not or could not pay simple interest promptly—was prohibited from occurring by order of the court.

. . .

*[L]egal suspension of an obligation to pay is an adequate reason why no added compensation or penalty should be enforced for failure to pay.*

329 U.S. at 166–167, 67 S.Ct. at 241–242 (emphasis added).

Like the attorney's fees in *Security Mortgage,* the interest on unpaid interest in *Vanston* was an additional liability claimed because of a default by the debtor on his obligations to the creditor. Enforcement of both claims was undertaken after the filing of the respective petitions. The difference in result in these cases may be attributed to the difference between the straight bankruptcy proceeding in *Security Mortgage* and the reorganization proceeding in *Vanston,* with its attendant injunction against payments to creditors. The present case is like *Vanston* but unlike *Security Mortgage.* *Compare* In re Black Ranches, Inc., 8 Cir., 1966, 362 F.2d 8; Northtown Threatre Corporation v. Mickelson, 8 Cir., 1955, 226 F.2d 212; United States Trust Co. of New York v. Zelle, 8 Cir., 1951, 191 F.2d 822; *with* In re Maryvale Community Hospital, Inc., 9 Cir. 1972,

456 F.2d 410; Ruskin v. Griffiths, 2 Cir., 1959, 269 F.2d 827.

National Acceptance Company v. Zusmann, 5 Cir., 1967, 379 F.2d 351, also relied on by the bank, is also inapposite. In *Zusmann* the debtor gave a promissory note to the creditor similar to the note in the present case. When the debtor failed to meet its payments, the creditor sent a ten-day letter demanding payment. Five days later the debtor filed a petition for an arrangement with his creditors under Chapter XI of the Bankruptcy Act. The District Court subsequently disallowed the creditor's claim for attorney's fees pursuant to the provision in the note, and we reversed.

The scope of a Chapter XI arrangement is different from that of a Chapter X reorganization. Chapter XI, unlike Chapter X, gives the court no power to alter the rights of secured creditors, such as the bank in the present case. 11 U.S.C. § 616(1); Collier's Trustees' and Receivers' Handbook § 1.003[2]. Therefore the pressing need to postpone dealing with any individual secured creditor until a comprehensive plan of reorganization could be formulated was not present in *Zusmann,* because the Chapter XI arrangement eventually adopted there could not include secured creditors, being limited in its effect to unsecured creditors.

Moreover, in *Zusmann,* unlike the present case, no injunction was entered against enforcement of creditors' claims[13] and there was no automatic stay provided by the Bankruptcy Act in that Chapter XI case. The trustee in *Zusmann* was not compelled by an order of the court or by the purpose of the proceedings to refuse the creditor's demand for payment.

---

**13.** Counsel for the bank asserted at oral argument, citing Section 428 of the Act, that the same automatic stay that takes effect upon the approval of a Chapter X petition, *see* 11 U.S.C. § 548, is provided for in Chapter XI and was in effect in *Zusmann,* rendering it indistinguishable from the present case. Section 428, however, is not part of Chapter XI, but rather Chapter XII (Real Property Arrangements), 11 U.S.C. § 828, and has no application to Chapter XI. If a stay or an injunction had been

entered in Zusmann, automatically or otherwise, the creditor's lien would never have become valid, because the running of the ten days would have been suspended. The relevant state law, Georgia Code Ann. § 20–506, required that the creditor wait ten days after sending his demand letter before instituting legal proceedings. In *Zusmann* the creditor initiated a foreclosure proceeding three days after giving the debtor notice of the demand for payment.

The cases relied on by the bank, therefore, do not control the question presented here. The bank's claim for attorney's fees, under the circumstances of this case, cannot be enforced in this Chapter X reorganization proceeding.

It should be noted, as the bankruptcy court observed, that the denial of this claim does not prejudice the bank's right to apply for reasonable compensation for attorney's fees, costs, and expenses incurred in the bankruptcy proceeding itself, as provided in the Bankruptcy Act. 11 U.S.C. § 643.

Affirmed.