ITT–INDUSTRIAL CREDIT
COMPANY, Appellant,

v.

John R. HUGHES, Trustee, Appellee.

No. 78–1162.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 12, 1979.
Decided March 7, 1979.

Richard A. Cohan, Charlotte, N. C., for appellant.

Trawick H. Stubbs, Jr., New Bern, N. C. (Stubbs & Perdue, P. A., New Bern, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, PHILLIPS, Circuit Judge, and JACK R. MILLER, Judge, United States Court of Customs and Patent Appeals, sitting by designation.

JACK R. MILLER, Judge:

ITT–Industrial Credit Company (hereinafter "ITT") appeals from the order of the district court affirming the bankruptcy judge's award to it of a total of $79,281.22 on its claim under an installment sale contract. The award reflects a difference of $13,422.62 from the balance claimed by ITT to be owing under the contract and the bankruptcy judge's rejection of ITT's claim for attorney's fees in the amount of $13,035.45.[1] In his brief, Trustee Hughes contests the inclusion of $5,800.78 for interest and $3,185.84 for "accumulated late charges" in the award and the refusal of the court below to allow the estate a credit against ITT for a pro rata portion of costs for maintenance, sale expense, insurance, and labor for keeping and preserving the property covered by the installment sale contract during pendency of the original proceedings in the local state court and the subsequent Chapter X proceedings. However, these points were not raised by cross-appeal, and therefore, we do not consider them.

On August 14, 1972, ITT advanced $177,335 to Boiling Spring Construction Co., Inc., of Southport, North Carolina, the bankrupt, for the purchase of an asphalt plant.

This was handled under a retail installment contract and security agreement assigned by the seller to ITT and duly recorded. The contract recited a balance of $228,319, the $50,984 excess over the amount advanced being labeled "Time Price Differential (Finance Charge) (Credit Service Charge)." The balance of $228,319 was payable in 60 monthly installments of approximately $3,805 each. Boiling Spring made payments totaling $144,601.78 before being placed in receivership in the Superior Court for Brunswick County, North Carolina, on November 7, 1975. On March 12, 1976, a Chapter X bankruptcy petition was filed in federal bankruptcy court, and shortly thereafter ITT filed its claim as a secured creditor. From the record before us, it appears that the estate was clearly insolvent. In June of 1976, the asphalt plant was sold at auction free and clear of liens. It has been stipulated that the amount received was $141,000, which was well in excess of ITT's secured claim.

With respect to the $13,422.62 additional amount ITT claims to be owing under the contract, ITT argues that it was entitled to the full amount remaining to be paid under the contract at the time the Chapter X petition was filed, namely $83,717.27; that a vendor may fix on his property one price for cash and another for credit; that the contract was a bona fide credit sale on an installment payment basis; and that upon default by Boiling Spring the entire outstanding balance was due, citing *Michigan National Bank v. Hanner*, 268 N.C. 668, 151 S.E.2d 579 (1966).[2] It quotes from N.C.Gen. Stat. 6–21.2(4) as follows:

As to conditional sale contracts and other such security agreements which evidence

---

1. The $79,281.22 total represents $70,294.60 (balance due on the contract on March 12, 1976, allowing full credit for prepayment, which is $13,422.62 less than the $83,717.22 claimed with no consideration for prepayment), $5,800.78 for interest from March 12, 1976 (date Chapter X petition filed) to January 12, 1977 (date of payment by trustee to ITT), and $3,185.84 for "accumulated late charges" to date petition was filed. ITT's total claim was for $99,938.51 ($83,717.22 balance under the contract plus $3,185.84 "accumulated late charges" plus $13,035.45 attorney's fee) plus interest.

2. The district court found this case "clearly not controlling" since it dealt with an installment sale contract only in the context of the state's usury laws. Also, we note that the pleadings did not allege that the arrangement represented a loan.

both a monetary obligation and a security interest in or a lease of specific goods, the "outstanding balance" shall mean the "time price balance" owing as of the time suit is instituted by the secured party to enforce the said security agreement and/or to collect said debt.

Also, we note that the contract provides, *inter alia* as follows:

Buyer hereby elects to purchase at time price and understands and agrees that the time price differential (finance charge) as specified herein is not interest upon a loan of money, or upon the forebearance [sic] of any debt. Buyer further agrees that credit extended pursuant to this contract is not a loan of money, and that any consideration for the sale, transfer or assignment of this contract is not to be construed as involving a loan of money to the Buyer.

■■ Although, as the district court observed, in the context of bankruptcy proceedings the rights of parties under an installment sale contract have been held to be governed by local law,[3] a bankruptcy court is not required to follow local law in determining what claims are to be paid. *Heiser v. Woodruff*, 327 U.S. 726, 732, 66 S.Ct. 853, 855, 90 L.Ed. 970, 975 (1946); *Security Mortgage Co. v. Powers, supra; In re Atlanta International Raceway, Inc.*, 513 F.2d 546 (5th Cir. 1975). It is essentially a court of equity and its proceedings are inherently proceedings in equity. *Young v. Higbee Co.*, 324 U.S. 204, 214, 65 S.Ct. 594, 599, 89 L.Ed. 890, 898 (1945); *Local Loan Co. v. Hunt*, 292 U.S. 234, 240, 54 S.Ct. 695, 697, 78 L.Ed. 1230, 1232 (1934); *Bennett v. W. T. Grant Co.*, 481 F.2d 664, 666 (4th Cir. 1973); *National Bank & Trust Co. v. Allied Supply Co.*, 386 F.2d 225, 228 (4th Cir. 1967); *Braddy v. Randolph*, 352 F.2d 80, 84 (4th Cir. 1965). The court "has the power to sift the circumstances surrounding any claim to see that injustice and unfairness is not done in

the administration of the bankrupt estate." *Pepper v. Litton*, 308 U.S. 295, 308, 60 S.Ct. 238, 246, 84 L.Ed. 281, 246 (1939). Substantial right and justice, rather than technical form, control. *Jones v. Kendall*, 34 F.2d 344, 347 (4th Cir. 1929).

■■ Notwithstanding the above quoted provision in the contract, the bankruptcy judge found that the contract rate of interest was 10.5%. This is fully supported by the testimony of ITT's representative. He also found that the contract provided no method for computing a prepayment penalty and that the bankrupt was not advised by any written document of the manner in which the prepayment penalty would be determined.[4] In affirming the bankruptcy judge's decision to not allow ITT to recover the outstanding balance under the contract to the extent that it represented unearned interest over the unexpired portion of the contract, the district court said:

In the absence of such a provision [*i. e.,* for prepayment penalty] the bankrupt should be entitled to credit for its early payment. This result follows logically from the idea that ITT, as a creditor, should not be allowed to recover its money and still continue to charge the bankrupt interest on that money.

We agree and note the following quotation in *Northtown Theatre Corp. v. Mickelson*, 226 F.2d 212, 214 (8th Cir. 1955), by the Eighth Circuit from the district court's opinion, which it affirmed, in a case involving the same issue:

[T]he rule is that a clause accelerating the maturity of the debt will not be enforced except upon cancellation of the unearned interest, for to do so would be unconscionable.

ITT's claim for $13,035.45 in attorney's fees is based on 15% (provided in the contract) of the $83,717.22 claimed under the contract, without a reduction for prepayment credit, plus the claimed "accumulated

---

**3.** *Security Mortgage Co. v. Powers*, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236 (1928); *In re Bettman-Johnson Co.*, 250 F. 657 (6th Cir. 1918).

**4.** We note that the contract provides: "3. You have the following rights, among others: (a) To pay off in advance the full amount due and to obtain a partial refund of the time price differential . . . . ."

late charges" of $3,185.84. Applying the 15% to $70,294.60, the amount claimed minus prepayment credit, and not taking into account "accumulated late charges" would yield a maximum potential fee of $10,544.19. We observe that the contract provides for attorney's fees "not to exceed" 15%, so an amount less than 15% is clearly contemplated. ITT's representative frankly states that the claimed $13,045.45 was based on the 15% maximum provided in the contract. His testimony on October 22, 1976, which was three months before payment was made on ITT's claim but some four months after sale of the asphalt plant, was that ITT had paid attorney's fees totaling $6,428.55 for services commencing "approximately November of 1975," when ITT was notified that Boiling Spring was going into receivership. He further testified that the fees were "Based upon time and expenses." However, evidence showing what services were performed is negligible, and there is no itemization of the "time and expense." The record discloses that neither the petition to the state court nor the petition to the federal court was filed by ITT.

■ The bankruptcy judge found that ITT gave no written notice to Boiling Spring that the account was in default and did not advise Boiling Spring of its rights under N.C.Gen.Stat. § 2–21.2(5) [5] to pay the balance on its account without incurring attorney's fees; therefore, the bankruptcy judge concluded that ITT was not entitled to receive attorney's fees, citing *In re Atlanta International Raceway, Inc., supra.* The district court affirmed, saying:

> Had the bankrupt (trustee) been given the required notice, then it may have avoided paying ITT's attorney's fees by simply paying the obligation under the

contract within five days. Also, the federal courts have consistently required a strict compliance with state statutory notice provisions in connection with the attempted recovery of attorney's fees (especially in the context of bankruptcy proceedings). [Citing *In re Atlanta International Raceway, Inc., supra.*]

■ ITT argues that notice for purposes of § 6–21.2(5) was given on or about May 12, 1976, when a claim was filed in bankruptcy. However, we are not persuaded that filing such a claim satisfies the statute.

ITT further argues that under a later paragraph in § 6–21.2(5) it would have been excused from giving written notice relative to attorney's fees but for events beyond its control. The paragraph provides:

> Notwithstanding the foregoing, however, if debtor has defaulted or violated the terms of the security agreement and has refused, on demand, to surrender possession of the collateral to the secured party . . . with the result that said secured party is required to institute an ancillary claim and delivery proceeding to secure possession of said collateral; no such written notice shall be required before enforcement of the provisions relative to payment of attorneys' fees in addition to the "outstanding balance."

ITT's point is that by court order, first from the North Carolina Superior Court and subsequently when Boiling Spring was removed from receivership to bankruptcy status, it was prohibited from instituting an ancillary proceeding. However, the statutory language does not provide for exceptions.

ITT next argues that it is "axiomatic" that the law does not require doing a vain

---

5. Section 6–21.2(5) provides in part as follows:
The holder of . . a note and chattel mortgage or other security agreement . . . which evidences both a monetary obligation and a security interest in or a lease of specific goods, or his attorney at law, shall after maturity of the obligation by default or otherwise, notify the maker, debtor . or party sought to be held on said obligation that the provisions relative to payment of attorneys' fees in addition to the "outstand-

ing balance" shall be enforced and that such maker, debtor . . or party sought to be held on said obligation has five days from the mailing of such notice to pay the "outstanding balance" without the attorneys' fees. If such party shall pay the "outstanding balance" in full before the expiration of such time, then the obligation to pay the attorneys' fees shall be void, and no court shall enforce such provisions.

thing and says that it would have been vain to notify Boiling Spring that it had five days in which to pay the outstanding balance to avoid payment of attorney's fees. However, such speculation can be matched by suggesting that the trustee might have made arrangements to satisfy ITT by posting a bond to avoid a claim upon the estate for attorney's fees.

Finally, ITT argues that "North Carolina Courts have held that notice is not required to be given prior to the institution of an action, i. e., before filing [a] claim" and that "the only requirement as to when notice is given is that it be given, after maturity of the obligation by default or otherwise." It is correct that § 6–21.2(5) sets no time limit. *First Citizens Bank & Trust Co. v. Larson,* 22 N.C.App. 371, 206 S.E.2d 775 (1974). However, as the district court pointed out, in the cases cited by ITT "even though notice was not given until after institution of the action, notice *was given*." [6]

ITT relies upon *Security Mortgage Co. v. Powers, supra* note 3, for the proposition that the contingent obligation to pay attorney's fees is a part of the contract. Although the court did say that the validity of a lien for attorney's fees was to be determined in accordance with the law of the state (Georgia), it also said, *supra,* 278 U.S. at 154, 49 S.Ct. at 86: "Whether the liability is, under the circumstances, enforceable against the proceeds of the sale raises federal questions peculiar to the law of bankruptcy." Moreover, it held that the objection to allowance of attorney's fees for failure to give notice prescribed by the state statute was "meritorious" if sustained by the facts, which were to be determined on remand of the case. *See Pierce v. Culverson,* 384 F.2d 368 (5th Cir. 1967).

Accordingly, we hold that the bankruptcy judge's disallowance of ITT's claim for attorney's fees was not an improper exercise of discretion.

In view of the foregoing, the award to ITT of $70,294.60 (allowing full credit for prepayment) and the disallowance of ITT's claim for attorney's fees are affirmed.

AFFIRMED.

---

6. *E. g., Binnings, Inc. v. Roberts Construction Co.,* 9 N.C.App. 569, 177 S.E.2d 1 (1970).