**In re DYE MASTER REALTY, INC., Debtor.**

**INDEPENDENCE NATIONAL BANK, Plaintiff,**

v.

**DYE MASTER REALTY, INC., Debtor; James E. Wall, Sr., Trustee in Bankruptcy for Dye Master Realty, Inc., Debtor; Gray Industrial Steam, Ltd.; and William Iselin & Co., Inc., Defendants.**

Bankruptcy No. C–B–81–568.

Adv. No. 81–0498.

United States Bankruptcy Court, W. D. North Carolina.

Oct. 16, 1981.

Langdon M. Cooper of Mullen, Holland & Cooper P. A., Gastonia, N. C., for plaintiff.

Albert F. Durham of Jordan, Durham & Wilson, Charlotte, N. C., for defendant James E. Wall, Sr., trustee.

Jeffrey M. Guller of Guller & Kakassy, Gastonia, N. C., for defendant Gray Indus. Steam, Ltd.

## JUDGMENT

MARVIN R. WOOTEN, Bankruptcy Judge.

THIS MATTER came on to be heard, and was heard, at 9:30 o'clock A.M. on 15 October 1981, upon a Complaint of Independence National Bank; seeking a determination by this Court under Section 506 of the United States Bankruptcy Code ("the Code"), 11 U.S.C. § 506, of the priority and extent of its alleged secured claim; and after considering the entire record, including all memoranda and briefs, and after hearing arguments of counsel and the presentation of evidence, it appears to the Court and the Court hereby makes the following

## FINDINGS OF FACT

1. Appearances were made as follows: (a) For the plaintiff—Langdon M. Cooper, Esq. of Mullen, Holland & Cooper P. A., Gastonia, North Carolina; (b) for the defendant James E. Wall, Sr., Trustee—Albert F. Durham, Esq. of Jordan, Durham & Wilson, Charlotte, North Carolina; (c) for the defendant Gray Industrial Steam, Ltd.—Jeffrey M. Guller, Esq. of Guller & Kakassy, Gastonia, North Carolina.

2. The originally designated plaintiff, Independence National Bank, did effective 5 October 1981 merge into Branch Banking & Trust Company, a North Carolina state banking corporation, in a statutory merger in which Branch Banking & Trust Company assumed all rights and obligations of Independence National Bank. The Court substituted Branch Banking & Trust Company as party plaintiff, and the term "the Bank" shall mean Independence National Bank or Branch Banking & Trust Company as applicable.

3. Dye Master Realty, Inc., Debtor ("the Debtor") is a North Carolina corporation against which an Involuntary Petition under Chapter 7 of the United States Bankruptcy Code was filed by Independence National Bank, and others, on 16 June 1981.

An Order for Relief was entered on 13 July 1981 at which time or shortly thereafter James E. Wall, Sr. was appointed Trustee ("the Trustee"), and he continues to serve as Trustee.

4. Gray Industrial Steam, Ltd., ("Gray") is a North Carolina corporation with its principal offices in Gaston County, North Carolina.

5. William Iselin & Co., Inc., ("Iselin") is a foreign corporation with offices in New York City, New York.

6. The only known assets of the Debtor were a tract of real estate, located on Bulb Avenue, Gastonia, North Carolina, and a 32,000 square foot building, some racks, miscellaneous office equipment and various fixtures located thereon. After negotiation, and the applicable notice and a hearing, the Trustee on 31 August 1981 consummated a sale of all assets of the Debtor located on Bulb Avenue, Gastonia, North Carolina, for the gross sales price of $315,000, to Stephen G. Gwaltney and wife, Beverly G. Gwaltney. No broker's commissions were due by reason of this sale as the Bank and the Trustee negotiated with and obtained the purchaser. After payment by the Trustee of the 1980 and 1981 City of Gastonia and Gaston County ad valorem taxes ($2,643.14 and $3,663.97 respectively), and the revenue stamps on the conveyance ($315.00), the Trustee was able to net $308,377.89 from the sale of these assets.

7. Prior to the sale of assets by the Trustee on 31 August 1981 as described above, the liens of the Bank, Gray and Iselin on the real estate and fixtures were transferred to the cash proceeds of the sale as now held by the Trustee, all pursuant to a "Stipulation and Consent Order" of this Court dated 14 August 1981.

8. On 12 June 1978 the Bank had loaned the Debtor the sum of $250,000, as evidenced by a certain promissory note (hereinafter "the Note").

9. The Note was secured by a North Carolina deed of trust (hereinafter "the Deed of Trust") dated 12 June 1978 and recorded 15 June 1978 in the Gaston Coun-

ty, North Carolina, Registry for the benefit of the Bank. The Note was additionally secured by a security agreement (hereinafter "the Security Agreement"), and Uniform Commercial Code filings were made in 1978 in Gaston County and Raleigh.

10. In September, 1980 the Debtor failed to make any payments under the Note, and in early 1981 the Bank instructed its counsel—Langdon M. Cooper, Esq. of Mullen, Holland & Cooper P. A.—to proceed to collect the outstanding debt. In addition to other typical terms, the Note provided that upon default the maker " . . . will reimburse the holder for all reasonable attorneys fees . . . incurred in enforcing (the obligation under the Note)." Pursuant to North Carolina General Statute § 6–21.2(5) the Bank by and through its counsel did advise the Debtor on 15 June 1981, by correspondence mailed to and received by the Debtor's registered agent in North Carolina (U. S. Corporation Company) that the provisions of the Note relative to the payment of attorneys fees, in addition to payment of the "outstanding balance", would be enforced if payment of the outstanding balance were not made within five (5) days.

11. As of 1 September 1981 the Bank claimed it was owed the following sums under the Note which was secured by the Deed of Trust:

| | | | |
|---|---|---|---|
| (a) | Outstanding principal | | $215,890.09 |
| (b) | Accrued interest: | | |
| | (i) from 15 Sept. 1980 to 1 Oct. 1980 at 10.5% | $ 931.58 | |
| | (ii) from 1 Oct. 1980 to 1 Jan. 1981 at 15% | 8,162.42 | |
| | (iii) from 1 Jan. 1981 to 1 Apr. 1981 at 22% | 11,451.04 | |
| | (iv) from 1 Apr. 1981 to 1 July 1981 at 19% | 10,226.68 | |
| | (v) from 1 July 1981 to 1 Sept. 1981 at 22% | 8,068.06 | /$38,839.78 |
| | SUBTOTAL OF PRINCIPAL AND INTEREST | | $254,729.87 |
| (c) | 15% North Carolina statutory allowance for attorneys fees | | $38,209.48 |
| (d) | Expenses advanced by the Bank (and secured): | | |
| | (i) cost of appraisal obtained to establish basis for considering offers which were received by the Trustee | $1,200.00 | |
| | (ii) plumber to drain water pipes | 72.00 | |
| | (iii) casualty insurance premium for 20 Dec. 1980 through 19 Dec. 1981 | 3,185.00 | /$4,457.00 |
| | TOTAL claimed by the Bank as of 1 September 1981 | | $297,396.35 |

12. The rates of interest used by the Bank for calculation of its claimed interest were determined as follows:

The rate of interest provided in the Note is 10½% until default, which occurred as of 1 October 1980. The Note provides for the payment of additional interest after default has occurred; it states: "While (the) default exists, (the maker shall) pay additional interest on the principal of (the) Note then outstanding at the rate representing the difference between (10½%) and the maximum rate permissible under the laws of North Carolina."

This Court takes judicial notice that when this loan of the Bank to the Debtor was made on 12 June 1978 the maximum interest rate under the laws of North Carolina applicable to this loan was twelve (12%) per cent per annum, and that in 1979 the North Carolina legislature eliminated any maximum interest rate limit on loans like the subject loan, and from the time that this Note became in default in 1980 through this day there has been no maximum interest rate which could be charged under North Carolina law on a loan of this size. The Bank argued that since it had originally offered the Debtor (the original maker) a choice of a flat 10½% rate or a "prime + 2%" rate (changing quarterly), and since "prime + 2%" was a common commercial rate for loans of this type and size throughout the period between October 1980 (when default occurred) and the present date, that that should be the rate to apply. Alternatively the Bank argued that the interest rate during default should be determined under the provisions of the Note by reference to the date of default and not by reference to the date of the original loan.

13. The Trustee offered testimony that the Bank's counsel contributed significantly to the efforts to sell the Debtor's assets and was largely responsible for the high price obtained, which in turn is what has created the equity available above and beyond what this Court might determine the amount of the Bank's exact claim to be.

14. The Court takes notice of the separate application filed by counsel for the

Bank which sets forth in detail by date the number of hours and a description of the legal services rendered, a total of 169.2 hours and a total of expenses advanced of $947.50.

Based upon the above findings of fact, the existing record in this bankruptcy case and this adversary proceeding file, and a careful consideration of applicable law, the Court enters the following

## CONCLUSIONS OF LAW

1. Pursuant to Interim Bankruptcy Rule 7002, and Bankruptcy Rule 701(2), this is an adversary proceeding in which the plaintiff seeks a determination of its priority status as a creditor with a wholly secured claim, as well as a determination of the specific amount and extent of such secured claim, all as provided in Section 506 of the United States Bankruptcy Code [11 U.S.C. § 506]. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1471 and 11 U.S.C. § 506. This adversary proceeding relates to a pending Chapter 7 case in this Court and the name and file number of the case are shown in the caption of this Judgment.

2. All defendants were duly served with process on 2 October 1981, and the Court has jurisdiction over all parties.

3. The lien of the Bank's Deed of Trust is a first lien on the real estate, now on the funds held by the Trustee; it is a superior lien to the alleged liens of Iselin and Gray. No determination is now made as to the priority or extent of the alleged liens of Iselin or Gray. The lien of the Bank in all machinery, equipment and fixtures of the Debtor under the Security Agreement is a first lien and was duly perfected by timely and applicable filings of Uniform Commercial Code financing statements in Gaston County and Raleigh. The liens of the Bank would be subject to any expenses and fees under Section 506(c) of the Code, but the Court has determined that sufficient funds will remain to satisfy all Section 506(c) claims.

4. The Bank is owed the following sums under the Note:

| | | |
|---|---|---|
| (a) principal | | $215,890 |
| (b) accrued interest at 12% per annum from 15 Sept. 1980 to 1 Sept. 1981 | | 24,842 |
| (c) reimbursement of expenses advanced | | |
| (i) appraisal | $1,200 | |
| (ii) plumber | 72 | |
| (iii) net casualty ins. prem. | 3,185 | / 4,257 |
| | | $245,189 |

5. No maximum interest rate for a loan like the subject loan existed in September, 1980, when the Debtor came to be in default under the Note; this Court believes an unlimited maximum interest rate was not contemplated by the parties on 12 June 1978 when the loan was made, and that the provisions dealing with the interest rate to be used after default would therefore have to be interpreted to mean that the interest rate to apply would be the maximum interest rate permitted under North Carolina law on 12 June 1978. Additionally, the Note (and in particular this provision of the Note) was a printed form prepared by and under the direction of the Bank; any ambiguity in such a document must be construed against the Bank as drafter of the document. The Bank could easily enough have made the language in the Note explicitly state that the interest rate to be applied after default would be determined at the *time* of default.

6. Mullen, Holland & Cooper P. A., as counsel for the Bank, complied with N.C.G.S. § 6–21.2(5) by mailing the so-called "5 day letter"; this Court, while aware of the decision of a Georgia district court in *ITT Industrial Credit Company v. Scarboro and Garnto,* (M.D.Georgia 1981), 13 B.R. 439, 4 CBC 2d 1222, continues to recognize the state of the law in the Fourth Circuit that provides that before a creditor's attorneys fees can be awarded under Section 506(b), and thus made part of the secured claim of that creditor, there must have been compliance with the applicable state law as to fulfillment of any conditions precedent to such recovery. Validity and construction

of contracts stipulating attorneys' fees is a question of state law. *ITT Industrial Credit Company v. Hughes*, 594 F.2d 384 (1979, Fourth Cir. C.A.) In this case there were two such conditions imposed by the law of North Carolina which had to be fulfilled—the Note had to provide for payment of the holder's attorneys fees and the "5 day notice" had to be given. Both of these conditions were satisfied.

■ 7. Enforceability in this Court of contracts stipulating attorneys fees is a question of federal bankruptcy law. *ITT Industrial Credit Company v. Hughes*, supra. Section 506(b) of the Code and its legislative history clearly permit this Court to award attorneys fees as a portion of a creditor's allowed secured claim, but the amount of these fees must be reasonable and reasonableness is a determination for this Court to make. A determination of what is reasonable requires a careful case-by-case analysis by the Court, and only broad general guidelines can be stated, among which, the following are representative:

"(1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation and ability of the attorneys; (10) The 'undesirability' of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974).

This Court has considered the Bank's counsel's role in, and responsibility for, the exceptional results obtained for the benefit of not only the Bank, but also the other creditors of the estate of the Debtor, and also concommitantly, this Court has considered the skill, experience, reputation and ability of Bank's counsel, the contingent nature of the fee, and additionally the fact the North Carolina legislature has specifically addressed itself to a definition for state purposes of what is a "reasonable" and customary fee in this commercial context in North Carolina:

North Carolina General Statute § 6–21.2 states:

"Obligations to pay attorneys' fees upon any note . . . in addition to the legal rate of interest or finance charges specified therein, shall be valid and enforceable, and collectible as a part of such debt, if such note . . . be collected by or through an attorney at law after maturity, subject to the following provisions;

(2) If such note, conditional sales contract or other evidence of indebtedness provides for the payment of reasonable attorneys' fees by the debtor, without specifying any specific percentage, *such provision shall be construed to mean fifteen per cent (15%) of the 'outstanding balance' owing on said note, contract or other evidence of indebtedness*". (Emphasis added).

■ While mindful of this Court's own desire to prevent a windfall to one creditor at the expense of other creditors, all of these factors which the Court has considered, and all applicable law, convince this Court that it is proper for the Court in its discretion to award an attorneys fee under Section 506(b) in excess of what would be generated on a strictly "hourly rate" basis. This Court believes that under the circumstances of this case a total attorneys fee to Mullen, Holland & Cooper P. A. of $22,500, and a reimbursement of expenses in the amount of $947.50, is entirely justified and proper. These amounts shall be considered as reasonable attorneys fees permissible under § 506(b) and are a portion of the Bank's secured claim under the Note.

8. The allowed secured claim of the Bank is secured by the $308,377.89 cash which the Trustee holds, and to which the lien of the Bank was transferred by Order of this Court, and since the value of such funds held by the Trustee exceeds the prin-

cipal portion of the Bank's claim, and the § 506(c) expenses and costs, the Bank is entitled under § 506(b) to its interest and all reasonable fees, costs and charges provided under the Note.

NOW, THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED that:

1. Branch Banking & Trust Company ("the Bank") is hereby substituted as plaintiff and the claim of the Bank be, and it is, hereby allowed as a claim under § 506 of the Code in the total amount of $268,636.50, and the Trustee is hereby directed to make payment of this claim in the amount of $245,189.00 directly to Branch Banking & Trust Company (formerly Independence National Bank) and in the amount of $23,-447.50 directly to Mullen, Holland & Cooper P. A., all in full satisfaction of all amounts due the Bank and the Bank's counsel.

2. The Trustee is hereby directed to retain the balance of the funds on hand pending further Order of this Court.

3. The costs of this adversary proceeding are taxed against the plaintiff.