**In the Matter of RECORD ENTERPRISES, LTD., Debtor.**

**Bankruptcy No. BK82–1132.**

United States Bankruptcy Court,
D. Nebraska.

May 21, 1986.

Michael C. Washburn of Erickson & Sederstrom, P.C., Omaha, Neb., for Omaha Nat. Bank, Trustee.

Paul F. Festersen, of Paul F. Festersen, P.C., Omaha, Neb., for debtor, Record Enterprises, Ltd.

MEMORANDUM OPINION RE ALLOWANCE OF ATTORNEY FEES UNDER SECTION 506(b) OF THE BANKRUPTCY CODE

TIMOTHY J. MAHONEY, Bankruptcy Judge.

*Facts*

The parties stipulated to the following:

1. On November 11, 1985, the Omaha National Bank as Trustee (ONB) filed an application for reimbursement and payment of fees and costs incurred and on December 16, 1985, filed a corrected application.

2. Debtor filed his voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code on June 28, 1982.

3. As of June 28, 1982, ONB claimed that debtor was indebted to it in the principal sum of $228,253 plus accrued interest of $29,017.16 plus trustee's fees of $4,281.80 for a total, exclusive of any attorney fees, of $261,552.09.

4. As of June 28, 1982, the indebtedness of debtor to ONB was secured by certain real and personal property described in documents annexed to ONB's proof of claim dated June 5, 1983. Such proof of claim is considered to be the allowed secured claim of ONB for purposes of the issues before the Court.

5. In the course of this case, with the acquiescence of ONB, debtor sold real and personal property claimed as collateral by ONB free and clear of the liens of ONB, of the liens of creditors whose interests were junior to those of ONB, and of the liens of various county, state and federal taxing authorities, both senior and junior to the liens of ONB. No liens superior to the liens of ONB remain.

6. As a result of payments by debtor to ONB and of payments discharging liens superior to the liens of ONB, the indebtedness of debtor to ONB amounted to $30,749.98 as of April 1, 1985.

7. At all times material hereto, the value of the property of debtor securing the claim of ONB has exceeded the amount of indebtedness claimed by ONB, including its claim of entitlement to include attorney fees as part of its allowed secured claim.

8. Debtor objects to the inclusion of attorney's fees as part of the allowed secured claim of ONB on the basis that such fees are not allowable as a matter of law and that, to the extent the same may be allowable, the amount of such fees exceeds a reasonable amount.

9. The legal services on account of which ONB seeks an addition to its allowed secured claim were rendered exclusively by attorneys and employees of Erickson & Sederstrom, P.C. The itemization of services attached to the original application accurately reflects the hours of service devoted by Erickson & Sederstrom, P.C., to the rendition of services to ONB herein and the specified rates of hourly compensation are fair and reasonable.

10. Attorney's fees and expenses paid by ONB as of June 28, 1982, for services performed by Erickson & Sederstrom, P.C., total $37,945.74, broken down as fees in the amount of $36,142.50 and expenses in the amount of $1,803.24.

11. Attorney's fees and expenses paid by ONB for services performed by Erickson & Sederstrom, P.C., subsequent to June 28, 1982, and through October 1, 1985, total $25,984.42 broken down as fees in the amount of $23,881.50 and expenses in the amount of $2,103.32.

12. All legal services rendered to debtor herein were rendered by Paul F. Festersen, P.C. Paul F. Festersen is the only profes-

sional employed by Paul F. Festersen, P.C. As reflected by applications for compensation filed in this case by Paul F. Festersen, P.C., for services through April 30, 1985, and as reflected by the records of Paul F. Festersen, P.C., with respect to services rendered from May 1, 1985, through and including November 30, 1985, a total of 172.8 hours of service were rendered by Paul F. Festersen, P.C., with respect to the claims of ONB, the disposition of property claimed as collateral by ONB, and the resolution of lien and tax claims affecting the position of ONB.

13. All exhibits provided to the Court for use in the determination of this issue are stipulated into evidence. Such exhibits and the factual stipulation constitute all the evidence to be considered by the Court; provided, however, that the Court may take judicial notice of any and all filings in the record of this case.

14. Upon final resolution of this matter the balance due on ONB's allowed secured claim shall consist of the remaining unpaid balance of $30,749.98 due ONB as of April 1, 1985, on which debtor has made and continues to make monthly payments, plus such amount, if any, as the Court may. allow ONB on account of its claim for attorney fees.

### Issue

If the contractual agreement to pay attorney fees to the creditor for collection, enforcement or collateral preservation activities is void under state law, may such attorney fees be awarded as a portion of a creditor's allowed secured claim?

### Decision

An attorney fee agreement that is void under state law cannot be the basis for an award of attorney fees as part of creditor's allowed secured claim.

### Discussion

The ONB and debtor entered into certain agreements concerning financing and guarantees. In at least one of the agreements, entitled "Guaranty Agreement", admitted in this matter as Exhibit "C" to ONB's Proof of Claim which is Exhibit "3" to the trial stipulation, the attorney fee provision reads as follows:

"The Combined Companies agree to pay all the costs, expenses and fees, including all reasonable attorneys' fees, which may be incurred by the Trustee in enforcing or attempting to enforce this Guaranty following any default on the part of the Combined Companies, whether the same shall be enforced by suit or otherwise."

That Guaranty Agreement was executed on July 15, 1976.

Under Nebraska law the attorney fee provision of the guaranty is unenforceable outside of the bankruptcy context. *First National Bank v. Schroeder,* 218 Neb. 397, 355 N.W.2d 780 (1984). See also *Quinn v. Godfather's Investments,* 217 Neb. 441, 442, 348 N.W.2d 893, 894 (1984).

Prior to the enactment of the Bankruptcy Reform Act in 1978, state law clearly governed the enforceability of attorney's fee agreements between oversecured creditors and bankrupt debtors. *ITT Industrial Credit Co. v. Hughes,* 594 F.2d 384, 387 (4th Cir.1979); *In re Carey,* 8 B.R. 1000, 1003 (Bankr.S.D.Cal.1981).

Congress, when enacting the Bankruptcy Reform Act spoke to the question of allowance of attorney fees for oversecured creditors in 11 U.S.C. § 506(b). That section provides:

"To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs or charges provided under the agreement under which such claim arose."

Although § 506(b) does not specifically refer to attorney fees, as other sections of the Code do, (see §§ 327 through 331 and § 503(b)(4)), § 506(b) has uniformly been interpreted to incorporate attorney fees

within its terminology. See, e.g., *In Re Banks*, 31 B.R. 173, 175 (Bankr.N.D.Ala. 1982); *L.H.D. Realty Corp. v. National Life Insurance Co., (In Re L.H.D. Realty Corp.)*, 20 B.R. 722, 725 (Bankr.S.D.Ind. 1982); *In Re Dye Master Realty, Inc.*, 15 B.R. 932, 935–36 (Bankr.W.D.N.C.1981); *In Re Sholos*, 11 B.R. 782, 784–85 (Bankr. W.D.Pa.1981); *Longwell v. Banco Mortgage Co.*, 38 B.R. 709, 711 (N.D.Ohio 1984); *In the Matter of Scarboro and Garnto*, 13 B.R. 439, 442 (M.D.Ga.1981); *In Re Virginia Foundry Company, Inc.*, 9 B.R. 493, 496–97 (W.D.Va.1981); *In Re American Metals*, 31 B.R. 229, 234–35 (Bankr.D.Kan.1983); *In the Matter of Elmwood Farm, Inc.*, 19 B.R. 338, 341 (Bankr. S.D.N.Y.1982); *In Re K.H. Stephenson Supply Company*, 768 F.2d 580 (4th Cir. 1985). See also *3 Collier on Bankruptcy*, Section 506.05 (1984).

The issue in many of the above-cited cases, as well as the issue that the ONB desires the Court to consider in this case, is whether or not § 506(b) of the Bankruptcy Code permits the award of attorney fees to a secured creditor whose allowed secured claim, including attorney fees is less than the value of the collateral and whose security instruments provide for the payment of such attorney fees following default and collection activities by the secured creditor. Although there seems to be a split in the authorities with regard to whether or not § 506(b) overrides state law which prohibits the award of such contractual based fees, the more recent and thoroughly analyzed cases have determined that federal law does override contrary state law. See *In Re K.H. Stephenson Supply Company*, 768 F.2d 580 (4th Cir.1985).

The *Stephenson* case went into great detail in analyzing the statute and the legislative history and compared the contrasting language in the original House version and the final Senate version of the bill. Based upon that analysis, the 4th Circuit concluded that in enacting § 506(b) Congress intended to abrogate the pre-existing requirement that attorney's fee agreements were enforceable only in accordance with state law. *Stephenson, supra*, at 585.

However, such a conclusion does not mean that the Bankruptcy Court may permit attorney fees to be included as part of an allowed secured claim if the agreement between the parties concerning attorney fees is void outside of the bankruptcy context.

The Nebraska Supreme Court has taken a strong position with regard to the invalidity of contractual attorney fee arrangements such as the one in this case. In *First National Bank in Ord v. Schroeder*, 218 Neb. 397, 355 N.W.2d 780 (Neb.1984) the Supreme Court of Nebraska stated at 355 N.W.2d 783:

"This court in *Quinn v. Godfather's Investments*, 217 Neb. 441, 442, 348 N.W.2d 893, 894 (1984), stated: 'The general rule in this jurisdiction is that attorney fees may be recovered only in such cases as are provided by statute, or where the uniform course of procedure has been to allow such recovery'. In *Quinn* we specifically held that a provision in a contract which provided that in the event of litigation involving the contract, the prevailing parties shall be entitled to costs, including attorney fees, was contrary to public policy and void. If public policy of Nebraska precludes awarding an attorney fee as costs otherwise authorized in a contract for which suit is brought, the corollary prohibits an attorney fee awarded as part of the costs in a suit involving a security agreement which provides that the secured party shall recover from the debtor 'any and all costs and expenses incurred in recovering possession of the collateral and incurred in enforcing' the security agreement. It would be a legal anomaly that Nebraska law prohibits recovery of an attorney fee as costs in a contract suit but permits recovery of an attorney fee in a suit involving a security agreement, a form of contract given to secure performance of the basic contract underlying the security agreement. Consequently, we hold that a provision in a security agreement which seeks to im-

pose an attorney fee on a debtor as part of the costs of suit to enforce the security agreement and its underlying contract is contrary to the public policy of Nebraska and, therefore, void and unenforceable."

According to Black's Law Dictionary, 5th Edition, 1979, the term "void" means:

"null; ineffectual; nugatory; having no legal force or binding effect; unable, in law, to support the purpose for which it was intended ... *void* in the strict sense means that an instrument or transaction is nugatory and ineffectual so that nothing can cure it. ... (T)he term 'void' can only be properly applied to those contracts that are of no effect whatsoever, such as are a mere nullity, and incapable of confirmation or ratification."

Under Nebraska law that section of an agreement which requires the payment of attorney fees which are not specifically authorized by statute or a uniform course of procedure is a section which is void.

An allowed secured claim in bankruptcy is a claim of a creditor secured by a lien on property in which the estate has an interest and it is secured to the extent of the value of the creditor's interest in the estate's interest in such property. 11 U.S.C. § 506(a). In other words, a creditor cannot have an allowed secured claim unless the creditor has a claim, which means a right to payment and that claim includes a lien against interest in property to secure the payment and that lien is either created by agreement or as a judicial lien or a statutory lien. See 11 U.S.C. § 101(4), (31), (30), (42), (45). If either the claim, the lien or the agreement, judgment or statute creating the lien are void, the creditor does not have an allowed secured claim with regard to those portions of the claim which are void.

For example, if for some reason a note or a mortgage were void as a matter of law, and not simply voidable by one or the other of the parties, a creditor would not have an allowed secured claim with regard to that portion of the claim that was void.

Under Nebraska law, as indicated above, agreements to charge the debtor with attorney fees for collection efforts by the creditor are void. Therefore, such agreement and the attorney fees incurred pursuant to such agreement cannot be a part of an allowed secured claim. Outside of bankruptcy the attorney fee agreement is simply a nullity. It can be and is disregarded. This Court does not believe that the accident of bankruptcy should or can be used to create something from nothing. Outside of bankruptcy the attorney fee agreement is not worth the paper it is written upon. The filing of a bankruptcy petition should not be permitted to work some magic and turn the paper into gold.

In conclusion, the application by the ONB is denied.

This memorandum opinion shall serve as findings of fact and conclusions of law as required by Bankruptcy Rule 7052 and Federal Rules of Civil Procedure 52.