HANNAH EMSON WILBUR, appellant.

*v.*

WILLIAM C. JONES, respondent.

[Argued June 21st, 1912. Decided November 18th, 1912.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Walker, who delivered the following opinion:

The bill in this cause was filed to foreclose a mortgage for $600 made by the defendant, William C. Jones, to the late Eph-

riam P. Emson, November 29th, 1894, and contains this recital, "said $600 is part payment as purchase-money." The mortgagee ·died in June, 1896. No interest was paid on the mortgage to him in his lifetime, and none has been paid to his executrix since his death. Mr. Jones was married at the time the mortgage was given, but his wife did not join in it, and the bill alleges that because the mortgage was a purchase-money mortgage its lien is superior to the inchoate right of dower of Mrs. Jones. The defendants, Mr. and Mrs. Jones, answer and say that the mortgage in question was given as collateral security for the payment of a chattel mortgage of $1,200 made by Mr. Jones to Senator Emson, on November 28th, 1894, the day before the making of the real estate mortgage, and that because the chattel mortgage has been fully paid and satisfied there is nothing due on the real estate mortgage, and in a cross-bill they pray that the mortgage for $600 may be delivered up to be canceled. Although these instruments bear different dates their delivery was contemporaneous, as was also that of a deed from Emson to Jones for the premises upon which the mortgage sought to be foreclosed was given.

The only living witness to the transaction and of the delivery of the deed by Emson to Jones and the making of the mortgage in question is Captain Charles Ewan Merritt, of Mount Holly, a member of the bar, who represented Mr. Jones, Senator Emson representing himself. Captain Merritt testified that the sale from Emson to Jones was for $3,800, paid as follows: A mortgage of $2,500 to clients of his, $100 cash paid by Jones and $1,200 in a chattel mortgage made by Jones to Emson. He further says that after this transaction Senator Emson stated to him (Merritt) in his office that he (Emson) had asked Jones to give him a mortgage on the real estate for $600 as security for his $1,200 chattel mortgage; that that might not "pan out" to $1,200, and there was, in his judgment, something more than $2,500 in the real estate and he wanted a mortgage for $600 as further security for the indebtedness of $1,200, and asked Captain Merritt what objection he had to it, and he replied that it was with Mr. Jones and him (Emson), whatever they decided to do was right and they could do it. He

then says that Mr. Emson wrote the $600 mortgage in his office, and that Mr. Jones "accepted" it in his (Merritt's) presence for the purpose mentioned. It appears that Captain Merritt told Mrs. Wilbur several years ago that he could not recollect the figures for which the property was sold, but he said in explanation that since that time his attention had been called to the whole matter and he had gone over and examined letters that he wrote to Mr. Jones and that the whole thing had come back to him.

The entire premises, real and personal, which figured in the transaction were a lot with a dwelling-house and drug store thereon erected, and the stock in trade in the store. They were owned by a man named Compton who conveyed them to a man named Butterworth to secure a debt of $900. Butterworth offered the entire premises to the defendant Jones for $3,800. Compton also owed Emson $900, and he (Emson) learning of the offer Butterworth had made to Jones, got Butterworth, with Compton's consent, to convey the property to him (Emson), he paying Butterworth's claim. On the day he (Emson) and Butterworth settled, Emson told him that he (Emson) had offered the property to Jones for $3,800.

We come now to a piece of evidence of great cogency. It is a note written by Senator Emson to Mr. Jones, December 31st, 1894, about a month after the transaction had been consummated, in which Emson asks Jones to send him a note for $1,200 (the $1,200 secured by the chattel mortgage), and says that he (Jones) can send him (Emson) a check for interest and discount or add it to the note, remarking that he (Jones) would owe him (Emson) interest since the day he was at Mount Holly—that is, the day the transaction was closed and the papers exchanged. After his signature and at the bottom of the note, in his own handwriting, Senator Emson adds this statement by way of postscript, "the $1,200 is what is due me as you will recollect." Senator Emson was a careful man, a man of considerable business acumen. He drew his own conveyances, and was a man of affairs. One month after this transaction he wrote to Jones about it, and, in my judgment, if Jones owed him the $600 mortgage at that time he would have

informed him that $1,800 was due him, and not $1,200, as stated in the communication. This declaration of Senator Emson, in his own handwriting, practically contemporaneous with the transaction, when considered in connection with all the other evidence in the case, to my mind points unerringly and conclusively to the fact that the $600 mortgage on the real estate was given and taken as additional security for the payment of the $1,200 secured by the chattel mortgage on the fixtures and stock in trade in the drug store.

On the law of the case much that is apposite is to be found in *O'Brien* v. *Paterson Brewing and Malting Co., 69 N. J. Eq.* (*3 Robb.*) *117,* in which Vice-Chancellor Pitney said (at *p. 127*):

"Against any relief is urged the time-honored rule that parol evidence cannot be used to vary or contradict the terms of a written contract.

"Without stopping at this moment to enumerate and classify the numerous exceptions to that rule, especially in a court of equity, it is sufficient to say that the evidence here relied upon does not tend to vary the terms of the contract. There is no contention that the complainant did not understand that he was signing an absolute promissory note in favor of the defendant, payable one day after date, and negotiable in its terms. What he does contend is, that it never had any binding effect upon him in equity.

"To show this by parol is no more a breach of the rule invoked than it is to prove that an absolute deed is given as a mortgage, or that a promissory note is given by the maker to the payee without consideration and as an accommodation to the latter, or that it was given for a consideration that had wholly failed, or was a mere gift, as in *Metler* v. *Metler, 18 N. J. Eq.* (*3 C. E. Gr.*) *270,* and affirmed on appeal, *19 N. J. Eq.* (*4 C. E. Gr.*) *457.*"

The defendant in the case at bar is not attempting by parol evidence to vary the terms of a written instrument, but is asserting a parol agreement made at the time the conveyances were executed, showing that the mortgage sought to be foreclosed, although absolute in terms, was given as additional or

collateral security for the payment of the chattel mortgage.
And in this I think he has abundantly succeeded on the evidence. Another thing, the defendant sets up and proves that he
has paid the chattel mortgage, and avers that there is nothing
whatever due from him to the complainant on account of the
mortgage sought to be foreclosed in this cause. This amounts
to a defence of payment, and, upon familiar principles, the defendant is entitled to show that he has paid a mortgage sought
to be enforced against him. Upon the question of payment, the
evidence concerning the reason for the giving of the real esate
mortgage, and the subsequent payment of the chattel mortgage
(which, under the defendant's contention, operates as payment
of the real estate mortgage), is receivable.

A mortgage has a dual character—first, it is a covenant to
pay a sum of money upon an expressed consideration, and
second, it is a conveyance of land to secure the debt. The first
is an executory contract, and the second an executed conveyance
with a defeasance, and liable to be defeated if at the time it is
sought to be enforced there is nothing due upon the executory
contract it was given to secure. See *Perkins* v. *Trinity Realty
Co., 69 N. J. Eq. (3 Robb.) 723, 727; affirmed S. C., 71 N. J.
Eq. (1 Buch.) 304.*

Upon this whole matter I have no doubt at all but that the
real estate mortgage for $600 was given as collateral security
for the payment of the $1,200 chattel mortgage, and that, the
latter being paid, the former must be canceled.

There will be a decree for the defendant denying the relief
sought by the complainant, and ordering the $600 mortgage to
be surrendered and delivered up for cancellation, but without
costs as against the complainant. The reason for this is that
the defendant was indifferent enough to make a mortgage absolute on its face, when intended only for collateral security and
he could have protected himself by insisting upon a proper recital in it. Not having done so, and the mortgage coming to
the executrix of the mortgagee after his death, who, the executrix, knowing nothing about the original transaction, was justified in filing a bill to foreclose the mortgage, and should not

be subjected to the payment of costs as the mortgagor succeeds only upon an affirmative defence.

*Mr. Samuel A. Atkinson,* for the respondent.

*Mr. Aaron V. Dawes,* for the appellant.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion filed in the court below by Vice-Chancellor Walker, but without costs.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, TRENCHARD, BERGEN, VOORHEES, MINTURN, KALISCH, BOGERT, VREDENBURGH, WHITE, TREACY—12.

*For reversal*—None.