CENTRAL PENN NATIONAL BANK, PLAINTIFF, v. SIMON BIRNBAUM, MORRIS STARKMAN AND ABRAHAM BIRNBAUM AS CO-PARTNERS TRADING AND D/B/A BSB ASSOCIATES, AND DORA BIRNBAUM, MRS. MORRIS STARKMAN, ROSE BIRNBAUM, BABBITT MANUFACTURING CO., STATE OF NEW JERSEY AND CENTRAL PENN NATIONAL BANK, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Salem County

Decided May 27, 1980.

*Peter T. Parashes* for plaintiff Central Penn National Bank.

*Francis P. Devine* of the Pennsylvania Bar appearing *pro hac vice* for plaintiff (*White & Williams* of the Pennsylvania Bar, attorneys).

*Ira Rabkin* for defendants Simon Birnbaum, Morris Starkman and BSB Associates (*Molotsky, Rabkin & Gross,* attorneys).

GRUCCIO, A. J. S. C.

In this matter defendants Simon Birnbaum, Morris Starkman and Abraham Birnbaum, as copartners, entered into a construction loan agreement, a mortgage and a mortgage note with plaintiff bank. Upon default of the mortgage and mortgage note, plaintiff now seeks to foreclose on the mortgage. By way of answer defendants interpose the defense of illegality of the mortgage. They allege that defendant Birnbaum entered into negotiations with the mortgage officer of the plaintiff bank and that as a prerequisite of granting of the mortgage he demanded for himself 1% of the maximum amount of the loan plus a 25% ownership in the contemplated project should the same become successful. Defendants base their counterclaim for rescinding the mortgage on the same illegal activity by the mortgage officer.

The matter is now before me upon plaintiff's motion to strike that illegality defense and its accompanying counterclaim. With respect to the above recited facts of the case, I have accepted the allegations of defendants insofar as they go beyond those facts which have been agreed to by the parties.

■ The general rule in the State, as set forth in *Feldman v. Gamble*, 26 *N.J.Eq.* 494 (Ch. 1875), is that a fraud or an illegality in the formation of a mortgage is a bar to its enforceability. And where the court finds the parties *in pari delicto* the court will leave them where it finds them, *Slater v. Gittleman*, 104 *N.J.Eq.* 172 (E. & A. 1928). A court of equity, however, will not blindly follow the motto *"Ex turpi causa non oritur actio,"* and where justice would be further served by allowing the action to be pursued, the court has inherent power to do so. 3 *Pomeroy, Equity Jurisprudence* (5 ed. 1941), § 940 *et seq.* In the case at bar plaintiff argues such an exception to the general rule.

■ Its first argument is one of public policy. Where the law protects one of the parties from just such an evil consequence as would result from the nonenforcement of the contract, the court will allow its enforcement to that end. Aligning the case at bar to that proposition, plaintiff argues that it is a national banking association subject to the provisions of the National Banking Act, 12 *U.S.C.A.* 1 *et seq.*, as well as other regulatory enactments. It has shown the loan and mortgage in question, with its assets and liabilities, on its books which have been available for inspection by federal bank examiners. Plaintiff further contends that the federal regulatory scheme which Congress initiated for controlling banking associations emanated from a legislative interest in protecting shareholders, depositors and creditors whose funds came into the possession of such associations. While there is no New Jersey law directly on point, the willingness of our courts to protect an innocent public from the illegal contractual arrangements of others is clearly evidenced by such cases as *Modern Industrial Bank v. Taub*, 134 *N.J.L.* 260 (E. & A. 1946) and *Hillsdale Nat'l Bank v. Sansone*, 11 *N.J.Super.* 390 (App.Div. 1951). While plaintiff cites *Mount Vernon Trust Co. v. Bergoff*, 272 *N.Y.* 192, 5 *N.E.2d* 196 (Ct.App. 1936), and *Bay Parkway Nat'l Bank v. Shalom*, 270 *N.Y.* 172, 200 *N.E.* 685 (Ct.App. 1936), which I find persuasively support its position, three decisions of the United States Supreme Court (*Union Goldmining Co. v. Rocky Mountain Nat'l Bank*, 6 *Otto* 640, 96 *U.S.* 640, 24 *L.Ed.* 648 (1877); *Deitrick v. Greaney*, 309 *U.S.* 190,

60 *S.Ct.* 480, 84 *L.Ed.* 694 (1940), and *D'Oench, D. & Co. v. Federal Deposit Ins. Corp.*, 315 *U.S.* 447, 62 *S.Ct.* 676, 86 *L.Ed.* 956 (1941)), squarely uphold the right of a bank to enforce an obligation which it holds (as a protection for the banking public) even though the obligation was created in illegal agreement. In *D'Oench*, 315 *U.S.* at 458, 62 *S.Ct.* at 679, 86 *L.Ed.* at 962, where the Federal Deposit Insurance Corporation brought the suit as receiver for the bank, the court stated that "as a matter of federal law, based on the policy of the National Banking Act to prevent the impairment of a bank's capital resources by prohibiting such acquisitions, . . . the defendant could not rely on his own wrongful conduct to defeat the obligation of the note as against the receiver of the bank."

Defendant's brief indicates that it does not dispute the right of plaintiff bank to the property which is the subject of the mortgage in the case at bar. It asserts, however, that those federal cases and New York cases would allow this court to limit plaintiff's recovery to the real estate set forth in the mortgage and that in light of the underlying illegality to which it asserts the plaintiff was a part, it would be equitable for the court to do so. Defendant, however, cites no authority for this proposition nor have I found any, yet, the judgment of foreclosure would accomplish what the defendant already accedes to. It appears that what defendants object to would be a residuary action for a deficiency judgment on the notes which accompany the mortgage. The rationale behind the public policy exception to the illegality rule is that it is the banking public and not the bank itself which is to be protected; accordingly, there appears to be no reason why the innocent public should be limited to a partial recovery while the unclean hands of defendants, having received the money for which they executed mortgage, note and construction loan agreement, should have enjoyed the use of that money and now be unaccountable for it.

My determination in this matter, however, can only extend to plaintiff's action for foreclosure. As to the defenses and personal liability which defendants seem to urge here, they will have to await an action for a deficiency judgment, if any. Accordingly,

I find defenses to the complaint and foreclosure to be of insufficient legal merit and that the counterclaim for rescission based upon the same facts and arguments equally fails. Both are stricken from the pleadings; plaintiff may move for entry of default judgment upon submission of its proofs in open court.