In the Matter of Edsel SCARBORO and Derrell L. Garnto, d/b/a Scarboro-Garnto Asphalt Company, Debtors.

ITT INDUSTRIAL CREDIT
COMPANY, Plaintiff,

v.

Edsel SCARBORO and Derrell L. Garnto, d/b/a Scarboro-Garnto Asphalt Company, Defendants.

Civ. A. No. 81–6–MAC.
Bankruptcy No. 79–01161.

United States District Court,
M. D. Georgia,
Macon Division.

July 6, 1981.

William M. Flatau, Macon, Ga., Trustee.

John M. Leiter, Harmon, Smith & Bridges, Atlanta, Ga., for ITT Industrial Credit Co.

OWENS, Chief Judge:

This action is before the court on cross-appeals from a decision of the Bankruptcy Court awarding ITT Industrial Credit Company attorneys' fees in the amount of $1,696.03 which were incurred for the sale of certain collateral in which it held a security interest. The petitioner below, Edsel Scarboro, by the Trustee, appeals the Bankruptcy Court's decision to apply 11 U.S.C.A. § 506(b) (1979) and award any attorneys' fees, and ITT Industrial Credit Company appeals the lower court's decision to apply Ga.Code Ann. § 20–506(b) (1977) in determining the *amount* of attorneys' fees and the court's failure to assess other costs and charges against petitioner as provided by 11 U.S.C.A. § 506(b) (1979). For convenience Mr. Scarboro will be referred to as appellant and ITT Industrial Credit Company will be referred to as ICC or cross-appellant.

### STANDING

For the first time on appeal ICC, plaintiff below, contends that the Trustee lacks standing to attack the constitutionality of Section 506(b) of the Bankruptcy Code of 1978, 11 U.S.C.A. § 506(b) (1979) because this would violate the general rule that one cannot attack the constitutionality of a statute by invoking the rights of others, citing *In re Wilson*, 4 B.R. 605, 2 C.B.C.2d 362, 364 (Bkrtcy.E.D.Wash., June 11, 1980). ICC argues that the Trustee may not assert a constitutional claim arising *before* the date a bankruptcy case is filed.

Section 541(e) of the Bankruptcy Code of 1978 provides that "the estate shall have the benefit of any defense available to the debtor as against an entity other than the

estate, including statutes of limitation, statutes of frauds, usury, and other personal defenses." 11 U.S.C.A. § 541(e) (1979). Obviously the Trustee has no power to assert claims or raise defenses for the debtor before the filing of a petition in bankruptcy. The Trustee is not—indeed cannot be—appointed until bankruptcy commences by filing of a petition; his powers commence upon appointment. However, it is also true that the constitutional defense raised in the instant case did not become assertable even by the debtor until, at best, when the petition was filed; and more correctly, it did not become available until ICC attempted to collect attorneys' fees under § 506 of the Code. At this time the bankruptcy proceedings were well underway, and there is no question that the Trustee was then vested with his representative powers and duties. In summary, at the time the defense became assertable by Mr. Scarboro bankruptcy proceedings were in progress and the Trustee had the power to assert that defense on behalf of the petitioner. Consequently, the Trustee *does* have standing to attack the constitutionality of "retroactive" application of § 506(b) of the Bankruptcy Code of 1978.

## RETROACTIVE APPLICATION OF SECTION 506(b)

▮ Appellant claims that the Bankruptcy Court's allowance of attorneys' fees to ICC was in contravention of the Fifth Amendment of the United States Constitution. Appellant granted a security interest in a John Deere front-end loader which, he argues, secured not only payment of the purchase price, but also payments of "reasonable attorneys' fees plus court costs if any." Thus, by written contract appellant contends that he gave ICC a substantive right in specific property and *acquired* the substantive right to ten days written notice before the right to attorneys' fees could be enforced by ICC. The Bankruptcy Court found that this right to attorneys' fees amounted to a contractual obligation rather than a substantial specific property interest, and that such are alterable by that court.

Appellant cites *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), in support of its contention that its right to ten days notice before the right to attorneys' fees could be enforced against him is a substantial specific property interest:

"The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment. Under the bankruptcy power Congress may discharge the debtor's personal obligation, because, unlike the states, it is not prohibited from impairing the obligations of contracts. Compare *Mitchell v. Clark*, 110 U.S. 633, 643, 4 S.Ct. 170, 312, 28 L.Ed. 279. But the effect of the act here complained of is not the discharge of Radford's personal obligation. It is the taking of substantive rights in specific property acquired by the bank prior to the act. In order to determine whether rights of that nature have been taken, we must ascertain what the mortgagee's rights were before the passage of the act." *Id.* at 589–590, 55 S.Ct. at 863.

The Bankruptcy Court found that appellant's right to ten days notice was not a specific property interest, but rather a contractual obligation; and held that it is well within the constitutional limits to Congress' bankruptcy power to statutorily effect such obligations. In support of its finding the court cited *Kuehner v. Irving Trust Company*, 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340 (1937):

"There is, as respects the exertion of the bankruptcy power, a significant difference between a property interest and a contract, since the Constitution does not forbid impairment of the obligation of the latter. While, therefore, the Fifth Amendment forbids the destruction of a contract it does not prohibit bankruptcy legislation affecting the creditor's remedy for its enforcement against the debtor's assets, or the measure of the creditor's participation therein, if the statutory provisions are consonant with a fair, reasonable, and equitable distribution of those assets." 299 U.S. at 451–452, 57 S.Ct. at 301.

This court is in agreement with the Bankruptcy Court that the notice requirement in the instant case is a contract obligation rather than a constitutionally protected property interest. It is not in the nature of those interests in *Radford* which were unconstitutionally affected. *See*, 295 U.S. at 594, 55 S.Ct. at 865, 79 L.Ed. at 1607.

Appellant argues that the question in the present case is whether the lien for attorneys' fees is *valid*, and that it is Georgia law which will determine this question. The Fifth Circuit in *In re Atlanta International Raceway*, 513 F.2d 546 (5th Cir. 1975), states that "validity of the bank's lien for attorney's fees is a question of Georgia law" and that under Georgia law "a lien for attorneys' fees is not valid until this notice and opportunity to pay have been provided to the debtor." Citing Ga.Code Ann. § 20–506. *Id.* at 548.

■ In general, the validity and construction of contracts stipulating attorneys' fees is a question of state law. *See, National Acceptance Company v. Zusmann*, 379 F.2d 351, 354 (5th Cir. 1967); *In re Delaney*, 534 F.2d 645, 647 (5th Cir. 1976). Enforceability, on the other hand, is a matter of bankruptcy law. 513 F.2d at 548–549.

Even if this distinction has heretofore been proper, it is of questionable applicability now, at least in the instant case. *In re Atlanta International Raceway*, stating this principle, was decided while the Bankruptcy Act was in force. There is some indication that Congress intends that the Bankruptcy Code of 1978 will treat clauses concerning attorneys' fees differently. Under "Legislative Statements" following the text of § 506(b), 11 U.S.C.A. § 506(b) (1979) the following appears: "If the security agreement between the parties provides for attorneys' fees, *it will be enforceable under Title 11, notwithstanding contrary law*, and is recoverable from the collateral after any recovery under § 506(c). Cong.Rec. (Sept. 28, 1978) P.H. 11095." (Emphasis added).

■ This court has been unable to find, nor have the parties cited, any cases dealing with the "retroactive" application of 11 U.S.C.A. § 506(b) to contracts executed prior to November 6, 1978, the date of enactment of the Bankruptcy Reform Act of 1978. Even so, the court is not convinced that what appellant calls retroactive application of § 506(b) will unconstitutionally increase his contractual obligations, because this section is *not* being applied retroactively.

The Bankruptcy Reform Act of 1978 has a general effective date of October 1, 1979; it is on that date that the Bankruptcy Code of 1978, including § 506(b), became effective. All petitions filed after that date are governed by the Bankruptcy Code of 1978. Consequently, the critical date in terms of the applicability of the Bankruptcy Reform Act is the date of filing of a petition in bankruptcy, *not* the date of various transactions between the petitioner and his creditors.

The petition in the instant case was filed on December 11, 1979. Accordingly, the new Code, *and Congress' intent as to its applicability*, governs appellant's case. The Bankruptcy Court's decision as to this issue is AFFIRMED.

## AMOUNT OF ATTORNEYS' FEES

In its Memorandum Decision and Order dated November 21, 1980, the Bankruptcy Court, after ruling that ICC was entitled to attorneys' fees pursuant to § 506(b) of the Bankruptcy Code of 1978, held that "[t]he only definition that can be given to the term 'reasonable attorneys' fees' used by the contract is that prescribed by Ga.Code [Sec. 20–506(b)]." (Memorandum Decision at p. 4). It then assessed the amount of attorneys' fees due, in accordance with Ga. Code Ann. § 20–506(b), to be $1,696.03.

ICC (cross-appellant) contends that the lower court's use of state law in determining the amount of attorneys' fees was error because § 506(b) of the Bankruptcy Reform Act creates a new substantive right which allows for reasonable attorneys' fees, and it is the Bankruptcy Court itself, rather than Ga.Code Ann. § 20–506(b) which should determine the reasonableness of any particu-

lar award of attorneys' fees. In support of this contention ICC cites the legislative history referred to earlier on this section in which attorneys' fees would be enforceable under Title 11, *notwithstanding contrary law*. The fact that the contract was made in Georgia does not, according to ICC, deprive the Bankruptcy Court of passing on the issue of reasonableness of any particular award it makes. Although not necessarily in agreement with the reasons given by cross-appellant for its objection to the Bankruptcy Court's determination of the amount of attorneys' fees, this court does agree that the determination was incorrect.

■ As a general rule, Bankruptcy Courts have broad discretion in determining the amount of attorneys' fees to award as compensation for services performed in connection with bankruptcy proceedings, and exercise of that discretion will not be disturbed absent a showing that it has been abused. *In re First Colonial Corp. of America*, 544 F.2d 1291, 1298 (5th Cir. 1977), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977); *Massachusetts Mutual Life Ins. Co. v. Brock*, 405 F.2d 429, 432 (5th Cir. 1968), *cert. denied*, 395 U.S. 906, 89 S.Ct. 1748, 23 L.Ed.2d 220 (1969); *In re Foster Iron Works, Inc.*, 3 B.R. 715, 717 (Bkrtcy.S.D.Tex.1980). An abuse of such discretion can occur in two ways: by failing to follow proper legal standards in making the determination, or by basing an award on clearly erroneous findings of fact. *In re Foster Iron Works* at 717. The first of these two is the concern in the present case.

The Fifth Circuit has held that in order to establish a basis for determining what is a reasonable compensation for an attorney's services, a district court must consider the following twelve factors:

"(1) The time and labor required; (2) The novelty and difficulty of the questions; (3) The skill requisite to perform the legal service properly; (4) The preclusion of other employment by the attorney due to acceptance of the case; (5) The customary fee; (6) Whether the fee is fixed or contingent; (7) Time limitations imposed by the client or other circumstances; (8) The amount involved and the results obtained; (9) The experience, reputation, and ability of the attorneys; (10) The 'undesirability' of the case; (11) The nature and length of the professional relationship with the client; (12) Awards in similar cases." *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–719 (5th Cir. 1974).

Although *Johnson* was a Title VII case, the Fifth Circuit has determined that it is equally applicable to an award of attorneys' fees in bankruptcy proceedings, and that when such proceedings are involved there are two *additional* considerations which must be kept in mind, *i. e.*, that the bankruptcy estate must be administered as efficiently and economically as possible and that sometimes bankruptcy attorneys perform "dual functions" which might lead to an award of duplicative fees if overlooked. *In re First Colonial Corp. of America* at 1299.

■ In determining what are reasonable attorneys' fees, the Fifth Circuit has established a three-step process which a Bankruptcy Judge must follow. First, he must determine the nature and extent of the services supplied by the attorney. This will require that the attorney file a statement showing the number of hours worked and containing a description of how each of these hours was spent. Second, he must ascertain the value of the services. Finally, he must briefly explain the findings and reasons upon which the award is based, including an indication of how each of the twelve factors listed in *Johnson* affected his decision. *Id.* at 1200–1300.

■ As noted above, the Bankruptcy Court in the present case determined that the term "reasonable attorneys' fees" used in the parties' contract could only be determined using Ga.Code Ann. § 20–506(b) (1977). The Bankruptcy Judge's Memorandum and Order did not follow the three-step procedure required when determining what are reasonable attorneys' fees. By failing to apply the prescribed standards and procedures for awarding attorneys' fees the Bankruptcy Judge abused his discretion.

Consequently, the Bankruptcy Judge's decision as to the *amount* of attorneys' fees must be vacated and remanded for a redetermination of the amount of fees to be awarded, in conformity with the guidelines established in *In re First Colonial Corp. of America.*

## OTHER COSTS AND CHARGES

ICC contends that inasmuch as its Application for Late Charges and Other Costs was not objected to, and because § 506(b) of the Bankruptcy Code of 1978 allows for these costs, the Bankruptcy Court erred in failing to allow ICC's application. In his Brief in Response to Brief of Cross-Appellant, the Trustee does not dispute ICC's claim for late charges and accrued interest; however, it does dispute any additional charges sought by ICC.

Accordingly, this issue is remanded and the Bankruptcy Court is instructed to rule in ICC's favor as to those uncontested late charges and other costs.

IT IS THEREFORE ORDERED that the decision of the Bankruptcy Judge dated November 21, 1980 is:

AFFIRMED on the issue of whether 11 U.S.C.A. § 506(b) (1979) is applicable in determining if attorneys' fees are available at all;

VACATED AND REMANDED on the issue of whether there was a proper determination as to the *amount* of attorneys' fees. In redetermining the amount of fees to be awarded, the Bankruptcy Court is instructed to follow the guidelines established by the Fifth Circuit;

REMANDED for a ruling in ICC's favor as to uncontested late charges and other costs allowed by 11 U.S.C.A. § 506(b) (1979).

SO ORDERED, this 6th day of July, 1981.