In re S.T.G. ENTERPRISES, INC., Debtor.

MARINER OF PENNSVILLE, INC., a New Jersey Corporation, Plaintiff,

v.

S.T.G. ENTERPRISES, INC., a New Jersey Corporation, Defendant.

Bankruptcy No. 81–04171.
Adv. No. 82–0133.

United States Bankruptcy Court,
D. New Jersey.

Nov. 3, 1982.

Malcolm H. Trobman, Novack & Trobman, Cherry Hill, N.J., for plaintiff.

Davis & Reberkenny, by Arthur J. Abramowitz, Cherry Hill, N.J., for Creditors Committee.

Ronald L. Glick, Moorestown, N.J., trustee.

Weber & Marcus by Scott H. Marcus, Woodbury, N.J., for debtor.

## OPINION

WILLIAM LIPKIN, Bankruptcy Judge.

The debtor, S.T.G. Enterprises (STG) filed a Petition under the provisions of Chapter 11 of the Bankruptcy Code on July 16, 1981, seeking to effect a reorganization. Mariner of Pennsville, Inc. (Mariner) had previously instituted a foreclosure proceed-ing upon a mortgage it held on the debtor's real estate in Pennsville, New Jersey. The mortgage arose out of the sale by Mariner to STG of the real estate, personal property and liquor license, which comprised the debtor's restaurant and bar business.

Mariner now seeks relief in a complaint to vacate the automatic stay of the foreclosure proceedings imposed by Section 362 of the Bankruptcy Code. A Trustee for the estate has been appointed who wants to sell all the debtor's assets for the benefit of the estate. To that end, the Trustee contests the validity and extent of the liens asserted by Mariner. Mariner recognizes that it cannot have a lien on the debtor's liquor license, under New Jersey law.

The transaction giving rise to the execution of the mortgage and alleged lien on the personalty occurred on November 25, 1974. At that time a mortgage was executed by the debtor to Mariner in the sum of $225,-000.00 which was properly recorded in the Clerk's Office of Salem County, New Jersey. In addition, STG executed a security agreement to Mariner, also in the sum of $225,000.00, covering the following:

A restaurant and bar business and building and all the appurtenances thereto including all utensils, equipment, stoves, refrigerators, furniture and all other items used in the conduct and operation of the restaurant and bar business located at Front Street, Pennsville, New Jersey . . .

A financing statement covering these items was filed with the Salem County Clerk's Office on November 27, 1974. No financing statement was filed with the Secretary of State of New Jersey. See N.J.S.A. 12A:9–401(1)(c). The financing statement was not renewed within 5 years of its filing date. See N.J.S.A. 12A:9–403. All parties recognize that Mariner does not have a perfected security interest on any of the debtor's personal property because of the failure to properly file a financing statement.

Mariner has filed a claim in the sum of $160,000.00 representing the balance due arising out of the entire transaction on which it seeks to impress a lien on the real

estate. Although the Trustee recognizes that Mariner's mortgage meets procedural filing requirements, he disputes the extent of the lien, based on the following circumstances which occurred when the mortgage was executed. The entire purchase price of the business sold to the debtor, including real and personal property, was $250,000.00. A cash payment of $25,000.00 was made, and the remaining sum of $225,000.00 was financed, as indicated.

The statement of settlement between the parties executed on the day of sale, clearly indicates that the entire amount of the $225,000.00 was not allocable to the real estate. The statement of settlement lists the following as consideration: "real estate $150,000.00 personalty $100,000.00." The statement also indicates that title insurance was to be procured by the debtor, insuring property in the value of $150,000.00. A transfer tax in the sum of $150.00 was paid by plaintiff-seller upon settlement, which would be consistent with a figure of $150,-000.00 associated with the real estate.

At trial, plaintiff Mariner presented an appraisal of the real estate subject to the mortgage, which indicated that the current value of the property is $292,520.00. There was no evidence as to the value of the real estate on November 25, 1974, the date of settlement, other than the $150,000.00 figure on the Statement of Settlement.

Plaintiff Mariner argues that its real estate mortgage is valid up to the full amount due for the sale of the business. It claims that at the time of the transaction it could validly place a mortgage on the real estate for more than the property was worth and a security interest on the personalty for more than that property was worth, but which two types of security together was sufficient to create security constituting a valid lien of $225,000.00. In its brief filed with this court on June 25, 1982, Mariner states that the allocation of $150,000.00 to real estate and $100,000.00 to personalty was solely for the following purposes:

1. To place a consideration in the Deed for the purpose of establishing the tra[s]fer (sic) tax to be paid and for

assessment purposes as far as the municipality is concerned.

2. For the purpose of determining the amount of title insurance required.

3. For Federal and State taxation purposes as well as for setting up the books and records of the corporate buyer.

4. For the purposes of establishing the base and for determining depreciation.

Notwithstanding these valid reasons for valuing the real estate, Mariner argues that this valuation is limited to these purposes and does not determine the amount of its lien or limit the extent of its security. This court recognizes good business judgment in transactions where both real estate and personal property are involved requires that a value be associated at the time of settlement with each of the two properties for the purpose of establishing a depreciation schedule and basis for tax credits arising out of such depreciation. Invariably, the rates of depreciation are considerably different, and replacement of the various items of personal property are accounted for in financial reports and tax returns. See *Kazmer-Standish Consultants v. Schoeffel Instrum. Corp.,* 89 N.J. 286, 293, 445 A.2d 1149 (1982), where the New Jersey Supreme Court advocated an apportionment of values as between real and personal property in a joint transaction.

The Trustee and the Creditors' Committee argue that the value of the real estate at the time the mortgage was executed established the maximum amount of the mortgage lien at $150,000.00 and not $225,-000.00. Similarly, the value of, and attempted lien on, the personal property was then set at $100,000.00. The Trustee argues that the liens were internally fixed at the time the security agreement and mortgage were executed, and the mortgage lien cannot be increased just because the lien on personalty is unperfected. The Trustee seeks to enforce the agreement of the parties as set forth in the settlement sheet.

The Trustee claims that the mortgage was originally valid only to the extent of $150,000.00 and not its face amount of $225,000.00. Thus, he reasons that the down payment of $25,000.00 and all payments thereafter on the principal amount of the $225,000.00 loan should have been allocated as 150,000/250,000 or 60% to the real estate mortgage and 100,000/250,000 or 40% to pay off the security interest on personalty.

Mariner refutes this allocation because there was no evidence that such distribution of the payments on the loan was actually made or intended. Mariner contends that it had a valid lien up to the amount of $225,000.00 which attached to the real estate regardless of the value of the real estate at the time the mortgage was executed. The promissory note between the parties recites that STG grants a security interest in all of its property, of whatever nature and wherever located, to Mariner to secure the debt of $225,000.00.

■ The Trustee makes no argument that the method or place of recording the mortgage was improper, making it invalid. See N.J.S.A. 46:17–1 et seq. Instead, the Trustee recognizes that the mortgage was properly recorded, but merely questions the amount due on it. Realistically, the debtor could only be liable up to the total principal sum of $225,000.00 because this was the amount of consideration given to the debtor, and not $450,000.00, the total of the two separate instruments. *Wilbur v. Jones,* 80 N.J.Eq. 520, 86 A. 769 (E & A 1912). Given that the mortgage was properly recorded and appears facially valid, under New Jersey law there is a presumption as to its validity, and the burden of proof as to any

invalidity is on the party making such an argument. *Matter of Sumner,* 4 B.R. 560, 564 (Bkrtcy.N.J.1980); *Lesser v. Strubbe,* 67 N.J.Super. 537, 171 A.2d 114 (App.Div.1961), aff'd 39 N.J. 90, 187 A.2d 705 (1963). Thus, the Trustee must overcome the presumption of the validity of the mortgage to the extent of its stated value of $225,000.00.

■ In order for the Trustee to challenge the extent of the mortgage he must assert one of the powers under Section 544 of the Bankruptcy Code [1] or he must be able to assert a claim or defense which the debtor would have absent bankruptcy. For this purpose, the Trustee is the representative of the debtor's estate and steps into the debtor's shoes for the purposes of asserting valid defenses to any creditors' claims. 11 U.S.C. § 323; 11 U.S.C. § 541(d); *In Re Edsel Scarboro,* 13 B.R. 439, 8 B.C.D. 72 (D.C.M.D.Ga.1981).

■ Under Section 544 of the Code, the Trustee possesses the rights of 1) a creditor on a simple contract with a judicial lien on the property of the debtor as of the date of the petition, 2) a creditor with a writ of execution against the property of the debtor unsatisfied as of the date of the petition and 3) a bona fide purchaser of the real estate of the debtor as of the date of the petition. It does not appear that any of these "strong-arm" powers entitle the Trustee to defeat the extent of the mortgage from its stated face value of $225,000.00. The mortgage was properly filed, is presumed valid and is notice to the world of a mortgage in the amount of $225,000.00. Neither a judicial lien creditor, an executing creditor or a bona fide purchaser of the real estate could defeat such a presumptively valid mortgage. N.J.S.A. 46:21–1.[2] In-

1. The court is not concerned with the Code provisions in Section 545, (Statutory liens); 547 (Preferences); 548 (Fraudulent transfers and obligations); 553 (Setoff), which are available to a trustee or debtor in possession.

2. 46:21–1. Recorded deeds or instruments as *notice to subsequent judgment creditors, purchasers and mortgagees*
   Except as otherwise provided herein or in chapter 9 of Title 12A of the New Jersey Statutes, whenever any deed or instrument of the

nature or description set forth in section 46:16–1 of this Title, which shall have been or shall be duly acknowledged or proved and certified, shall have been or shall be duly recorded or lodged for record with the county recording officer of the county in which the real estate or other property affected thereby is situate or located such record shall, from that time, be notice to all subsequent judgment creditors, purchasers and mortgagees of the execution of the deed or instrument so recorded and of the contents thereof.

deed, it is not clear how the Trustee is attempting to argue that any of these "strong-arm" powers could defeat the mortgage in this case.

If the Trustee can hope to defeat any part of the mortgage, it must be because the debtor itself has some ground to challenge the extent of the mortgage. However, the arguments made by the parties are not clear as to what these grounds might be. There is no contention by the Trustee or creditors' committee that there was a failure of consideration for the granting of a mortgage or any fraud on the part of Mariner, such as would render part of the mortgage voidable by the debtor. See generally, 59 C.J.S., *Mortgages,* §§ 87–97, 140–144 (1949); *Central Penn Nat'l Bank v. Birnbaum,* 175 N.J.Super. 290, 418 A.2d 293 (Chan.1980); *Albizu v. Ace Enterprises Co.,* 163 N.J.Super. 42, 394 A.2d 149 (Chan.1978); *Roxbury State Bank v. The Clarendon,* 129 N.J.Super. 358, 324 A.2d 24 (App.Div.1974), cert. denied, 66 N.J. 316, 331 A.2d 16 (1974); *Cona v. Gower,* 89 N.J.Super. 510, 215 A.2d 575 (Chan.1965).

The only possibility of fraudulent behavior that appears to this court is a subterfuge regarding the tax consequences of the sale of real and personal property. Both STG and Mariner assigned the value of $150,000.00 to the real estate for the purposes of insurance, for computing the transfer tax and for determining the basis for future federal and state taxes. Similarly, the allocation of $100,000.00 to personalty indicated the tax basis to be used, for example, in determining depreciation. If the real estate were actually worth a greater sum at the time of the sale, or if the debtor did not use these allocations in determining its tax liability, a fraud might have been committed as to the taxing authorities. However, there was no proof presented to this court that any fraud was intended or occurred.

Even if there was such a fraud, as against tax authorities, that is no reason to limit the extent of the mortgage in favor of the Trustee or the debtor's creditors. In a case with a similar holding, *VanDyke v. Carol Building Co.,* 36 N.J.Super. 281, 287, 115 A.2d 607 (App.Div.1955), the court held that the absence of federal revenue stamps on deeds conveying land had no effect on the validity of the conveyance or mortgage but only subjected the parties thereto to penalties imposed by federal tax statutes. If there is any fraud in the present case, it would not be in the creation of the mortgage, because both mortgagor and mortgagee here voluntarily entered into the agreement, exchanged consideration worth $225,-000.00 and agreed on the valuation of realty and personalty for tax purposes. There was simply no evidence presented to this court in the nature of mistake, fraud or other illegality, such as would alter the facial validity of the mortgage. Since the debtor voluntarily entered into this agreement, and signed a promissory note granting Mariner a security interest in all its property, up to the full amount of the loan, the Trustee's rights cannot defeat any valid lien created as a result of this note.

■ When determining the allocation of payments to be made by a creditor, the general rule is that the law will apply the payments made first to unsecured or less-secured debts, when the creditor also holds a fully-secured debt. 70 C.J.S., *Payment,* § 73 (1951); *Lincoln Storage Warehouses v. Commissioner,* 189 F.2d 337 (3 Cir.1950); *Long v. Republic Varnish Enamel,* 115 N.J.Eq. 212, 216, 169 A. 860 (E. & A. 1933). The Trustee has not argued, or presented any evidence, to indicate that the parties applied, or intended to apply the payments made in a manner contrary to this general law. Thus, it can be assumed that all payments made were applied against the debt owed on personal property, leaving a fully-secured debt on real estate.

Nor has the Trustee presented any overriding equities which would allow this court to overlook the presumptive validity of the mortgage to the full extent of its face value. Even though it may have been shrewd for the mortgagee to fix the value

of real estate only for some purposes and not for the extent of the mortgage, it was only attempting to protect the full value of its loan.

Mariner failed to properly perfect its security interest in the debtor's personalty and, thus, has lost all right to any of the personalty. The Trustee succeeds to all title and interest in the debtor's personal property. Legally and equitably, Mariner, as mortgagee, is getting no more than the value of its loan to the debtor. The Trustee is receiving the value of the personal property and the excess value of the real estate after the mortgage to Mariner is paid off. The Trustee has not presented any equities which should alter this distribution. The Trustee has not met its burden of demonstrating that the mortgage is invalid or voidable to any degree.

Let an order be submitted in accordance with this opinion.