**In re Edward L. LANZA and Lena C. Lanza, t/a Canal Motel, t/a Seascape Condominium, t/a Ed's Canal Pavilion, Debtors.**

Bankruptcy No. 82–03214.

United States Bankruptcy Court,
D. New Jersey.

July 16, 1985.

Ronald L. Glick, Cinnaminson, N.J., for debtors, Edward L. Lanza and Lena C. Lanza.

Clarence P. Reberkenny, Davis, Reberkenny & Abramowitz, Cherry Hill, N.J., for First Peoples Bank.

Hugh M. Leonard, Newark, N.J., United States Trustee.

## OPINION

EMIL F. GOLDHABER, Chief Judge:[1]

The pivotal inquiry brought before the bench on the debtor's objection to a bank's proofs of claim, is whether the evidence supports a bank's entitlement to the three claims at issue, notwithstanding its apparent gross deviations from standard banking practice. After carefully weighing the evidence, we will reduce the amount of the first claim but uphold the remaining two in full.

We recapitulate the facts of this contro-

---

1. Specially designated to hear and dispose of cases in the United States Bankruptcy Court for

versy as follows:[2] The debtors filed a petition for reorganization under chapter 11 of the Bankruptcy Code ("the Code"). Against the estate thereby formed, the First Peoples National Bank ("the Bank") filed three proofs of claim. In support of the first proof of claim (No. 15) it appears that the debtors conveyed a mortgage on a parcel of real estate to the Bank in exchange for a construction loan with which to improve the subject property. This mortgage was executed for a denominated indebtedness of $200,000.00 although only $125,000.00 was advanced at settlement. The Bank later advanced $170,000.00 to the debtors through a series of unsecured loans, none of which, the Bank concedes, were charged against the original mortgage. Apparently, after some criticism of these advances from its auditors, the Bank convinced the debtors to grant another mortgage for $350,000.00 using the now improved property as collateral and allocating $125,000.00 of the proceeds to satisfy the original mortgage and $177,520.00 to discharge the unsecured indebtedness and interest. The mortgage was then properly filed and recorded. At the hearing the Bank presented conflicting testimony on the outstanding balance remaining on the mortgage and, weighing this discrepancy against the bank, we adopt the lowest figure presented by the Bank,—namely, $300,000.00.

The second proof of claim (No. 14) is based on a demand note and a properly recorded mortgage which secures a principal debt of $24,500.00, plus interest to date, for a total sum of $40,282.60. No evidence refuting this claim was introduced and we adopt this figure.

Under the third proof of claim (No. 13) the Bank asserts an outstanding unsecured indebtedness of $27,639.62.[3] The parties

are in apparent agreement that this claim accurately expresses the outstanding indebtedness and we so find.

■ Apparently finding the expansive relief of the automatic stay insufficient succor in this creditor-ridden world, the husband-debtor met his ultimate demise during the pendency of this proceeding. By entry in the book of debtor necrology he possesses the only justifiable excuse for failing to add his voice to the dearth of testimony on the loans at issue. Not a scintilla of first hand testimony on the transactions under scrutiny was offered. The wife-debtor professed ignorance of all her husband's financial dealings. The Bank, possibly cowering under the far graver spectre of intentional malfeasance, offered shockingly little evidence in support of loans totaling approximately one-third of a million dollars. The examples of so-called bookkeeping for a public financial institution that were presented to us as evidence could easily warrant for a half-dozen or so loan officers an other-worldly judgment[4] of perdition, forever condemning them to scramble about the floor of Pandemonium, each looking for the missing beads of his shattered abacus.

Notwithstanding her apparent ignorance, the wife-debtor, nonetheless, failed to present any evidence to undercut the Bank's moribund case. Although it is said that, "You can't take it with you," the husband-debtor apparently did take with him every financial record of "it" that he ever possessed. Not so much as a check stub supported the debtors' case.

As a preliminary point in our brief discussion, the Bankruptcy Rules state that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and

---

the District of New Jersey at Camden.

**2.** This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052.

**3.** Plaintiff's exhibit of the original demand note includes a notation that interest was paid to May 7, 1981.

**4.** We of the bankruptcy court could enter no such final judgment, the subject matter not being a core proceeding since that power is justifiably reserved to a higher "judicial" authority. 28 U.S.C. § 157(b), *C.f., Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

 

amount of the claim." Bankruptcy Rule 3001(f). "It follows, that the burden of going forward with the proof is on the objecting [party], not the claimant. That burden is not satisfied by the mere filing of an objection." *In Re Trending Cycles for Commodities, Inc.*, 26 B.R. 350, 351 (Bankr. S.D.Fla. 1982). All parties are in apparent agreement that monies were lent and liabilities incurred and, thereby, the principles underlying Rule 3001, and its applicability to the case before us, are bolstered. In short, as will be seen below, the Bank did not win this case; the debtors lost it.

■ On a related front in the realm of presumptions, under applicable New Jersey law, if a mortgage is properly recorded and appears facially valid, "there is a presumption as to its validity and the burden of proof as to any invalidity is on the party making such an argument." *Mariner of Pennsville, Inc. v. S.T.G. Enterprises, Inc.* (*In Re S.T.G. Enterprises, Inc.*) 24 B.R. 173, 176 (Bankr.D.N.J.1982).

■ On the first claim, the debtors argued that the lack of supporting documents and mismanagement of the file should invalidate the Bank's claim. However, as stated above, the burden of proof is not on the Bank to substantiate its claim with extensive documentation, the onus is on the debtor to overcome the presumption of validity. Although the court recognizes the wife-debtor's hardship in supplying this evidence, without guidance or her husband's records, the law is clear that with no evidence offered by the debtors to invalidate the loan or the properly recorded mortgage, the claim must be upheld. However, because of conflicting statements by the Bank's own employees on the balance of the indebtedness, we adopt the Bank's lowest figure of $300,000.00. The Bank should rightfully bear the burden of the ambiguity in light of its abysmal bookkeeping.

We found above that on the second claim the Bank has a secured indebtedness of $40,282.60 and on the third claim the Bank holds an unsecured indebtedness of $27,-

639.62. The facts on these claims are virtually undisputed, rendering any further analysis unnecessary.

On the debtor's objection to the Bank's three proofs of claim we will accordingly enter an order to reduce the first claim to the secured amount of $300,000.00, uphold the second secured claim in the sum of $40,282.60, and uphold the third claim in the unsecured amount of $27,639.62.