**In the Matter of CHICAGO, MILWAU-KEE, ST. PAUL AND PACIFIC RAILROAD CO., Debtor.**

**Bankruptcy No. 77 B 8999.**

United States District Court,
N.D. Illinois, E.D.

July 10, 1985.

Robert Wheeler, Isham, Lincoln, Beale, Chicago, Ill., for trustee of Chicago, Milwaukee, St. Paul & P.R. Co.

Edmund Kenny, Winston & Strawn, Chicago, Ill., for First Nat. Bank of Chicago Indenture trustee.

Larry Bemis, Kirkland & Ellis, Chicago, Ill., for Debenture Holders Protective Committee.

## DECISION ON OBJECTIONS OF INCOME DEBENTURE HOLDERS

McMILLEN, District Judge.

The Protective Committee for Chicago Milwaukee Bond and Debenture Holders and the First National Bank of Chicago as the Indenture Trustee have objected to that portion of the Trustee's 1985 Plan of Reorganization applicable to their clients and beneficiaries, specifically debentureholders under an Indenture dated January 1, 1955. These debentures are the only Class B claims covered by the Plan and are the only outstanding securities remaining in the estate except for the preferred and common stock. The objectors attack principally § *5.4 Interest Rate* of the Plan which provides in part as follows: "Interest with respect to Class B Claims will be calculated at the coupon rate applicable to the Debentures (5 percent) when and as earned, as determined in accordance with the provisions of the Indenture...."

The objectors propose that the 1985 plan be modified to provide (a) payment of inter-

est on the principal amount of the debentures as a fixed, rather than contingent, obligation; (b) interest should be paid on the principal amount beginning January 1, 1976; (c) the rate of interest should be calculated at the legal rate specified by 28 U.S.C. § 1961 beginning January 1, 1978, on all principal and accrued interest as of January 1, 1978 and on all post-petition installments of interest after that date; or (d) that an equitable rate of between 15 and 18 percent simple interest should be paid on the foregoing at a rate to be determined by the court.

At the opposite end of the spectrum is a proposal of the Chicago Milwaukee Corporation, owner of most of the common and preferred stock, and the debtor, the Chicago, Milwaukee, St. Paul and Pacific Railroad Co. They contend that the Plan should provide for maintaining the debentures in their present status, as is to be done with the common and preferred stock. This would require curing any default and paying 5 percent interest out of Available Net Income until the year 2055, as provided by the Indenture.

As we will demonstrate, a fair and equitable treatment of the debentureholders is to enforce the acceleration provisions of the Indenture dated January 1, 1955, with the result that Class B claims will be paid as follows:

1. Interest at the rate of 5 percent begins to run on January 1, 1976, the beginning of the first calendar year prior to the filing of the reorganization petition.

2. Interest runs at that rate every year thereafter, regardless of whether there is Available Net Income.

3. Interest constitutes an allowable claim which itself bears interest at a fair and equitable rate as provided in § 5.3 of the Trustee's 1985 Plan. (This rate is now provided to be 5 percent per annum, without compounding, according to § 5.4 of the Plan, but the Trustee and most of the Class A and Class C creditors have agreed on a higher rate.)

4. Principal is a Class B claim which will not accumulate additional or double interest.

The Indenture is a lengthy and carefully drafted document of 75 pages dated January 1, 1955, and the rights of the debentureholders depend upon the proper interpretation and application of various provisions therein. We will refer to those portions which have been relied upon by the parties to this particular claim.

The first provision to which our attention has been called is Article XI, § 2 which provides in pertinent part (p. 61–2):

> If one or more of the following events, herein called Events of Default, shall occur that is to say:
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> (f) The Company shall ... file a petition or answer or consent seeking reorganization or readjustment under the Bankruptcy Act...;
>
> \*　　\*　　\*　　\*　　\*　　\*

then ... unless the principal of all the Outstanding Debentures already shall have become due and payable, the Trustee may, and upon the written request of the holders of 25% in principal amount of the Outstanding Debentures shall, by notice in writing mailed to the Company, declare the principal of all Debentures to be forthwith due and payable, and *upon any such declaration the same shall become and be forthwith due and payable, together with all unpaid interest,* if any, notwithstanding the date of maturity thereof, as stated in such Debentures or in the coupons, if any, pertaining thereto, or in the Indenture. [emphasis added]

Notice in writing was mailed to the debtor company by the First National Bank of Chicago as indenture trustee on January 12, 1978 and on January 26, 1978. The second letter demanded "payment of the whole amount made due and payable by virtue of the aforementioned declaration of maturity. The Indenture provides that interest at the rate of 5 percent on the overdue principal will continue to accrue until said principal is paid."

The above paragraph of § 2 supports the objectors' position that, upon proper de-

mand, the principal as well as unpaid interest becomes immediately payable. This is reaffirmed by the last paragraph of § 2 which provides that, if the Company pays or makes provision for payment of "all unpaid interest" plus the principal of any debentures which have become due, then the Indenture Trustee or the holders of a majority of the debentures may "annul such declaration of the maturity of the Debentures." This qualification on acceleration was not exercised, of course, but it illustrates that payment of interest by the Company gave the debentureholders an option to allow the debentures to remain in force. Nowhere in §§ 2 or 3 is there a qualification that the interest referred to must be due out of Available Net Income, nor would there be any reason why the Company would not pay such income if and when earned. To the extent that the Indenture is not completely self-explanatory, it is to be construed against the Trustee and the debtor.

Section 3 of Article XI, referred to in the second letter of the Indenture Trustee, provides in pertinent part:

> The Company covenants that (a) if default shall be made in the payment of any installment of interest on any of the Outstanding Debentures when and as such interest shall become due and payable as therein and in the Indenture expressed, and such default shall continue for 60 days, or (b) if default shall be made in the payment of the principal of any Outstanding Debentures when the same shall become due and payable, whether at the maturity of such Debentures, upon redemption, by declaration or otherwise, then, upon demand of the Trustee, the Company will pay to the Trustee for the benefit of the holders of such Debentures and coupons the whole amount then due and payable on such Debentures and coupons, for principal or interest, or both, as the case may be, *with interest on the overdue principal at the rate of 5% per annum;* ... [emphasis added]

Similar provisions appear in the Debenture Form itself. At p. 2–3, the Indenture provides that the Form of Coupon contain the following:

> If an Event of Default, as defined in the Indenture, shall occur and be continuing, *the principal sum of this Debenture may be declared or may become due and payable prior to the stated date* of maturity hereof in the manner, with the effect and subject to the conditions provided in the Indenture.

> \* \* \* \* \* \*

> When said principal sum becomes due and payable, or when an Event of Default as defined in the Indenture shall occur, any interest on this Debenture reserved as hereinafter provided *and interest (to the extent not otherwise payable)* at the rate of 5% per annum *from January 1 of the next preceding calendar year* to the date such principal sum becomes due and payable or when such event of default occurs, *shall then be due and payable.* [emphasis added]

■ The foregoing provisions seem to clearly require payment of interest on the principal upon default, particularly when one considers the emphasized clause quoted from § 3 above. Interest may be awarded as a matter of equity between creditors in solvent reorganization cases. *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946).

The Trustee contends that interest is payable only out of "Available Net Income" as defined in Article V on p. 35 of the Indenture. This was earned in only two years after 1977 and would limit the debentureholders claim to a total of 10% (5% for each year). However, Article V, § 6 (p. 36) specifically subordinates that Article to Article XI. Section 6 of Article V provides:

> The provisions of this Article V are hereby made expressly subject to each and all of the remedies of the Trustee or the Debentureholders as set forth in Article XI, and the operation of the provisions of this Article V shall be suspended during the continuance of either of the Events

of Default specified in clause (a) or clause (b) of Section 2 of Article XI. Clauses (a) and (b) of § 2 of Article XI refer to default in payment of principal or interest when due and payable. This adds nothing to the default in the event of bankruptcy or reorganization (§ 2(f), *supra*, pp. 1006–1007), since acceleration of principal and interest then occurs.

■ The Trustee contends that the acceleration provisions of Article XI need not be enforced in a § 77 reorganization proceeding. *In re Chicago, Milwaukee, St. Paul & P.R. Co.*, 658 F.2d 1149 (7th Cir.1981); *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982). This may be true, but would it be fair and equitable treatment of the debentureholders? They have received no interest on their debentures for many years and have seen their value decline to a negligible amount. Furthermore, the Trustee has taken the position that the Indenture should be enforced "according to its terms." Even the Chicago Milwaukee Corporation has taken this position, alternatively. We find that this is a fair and equitable disposition of the debentureholders' claims and that the 1985 Plan should be amended accordingly.

The Chicago Milwaukee Corporation and the debtor contend, perhaps seriously, that the merger provision of Article VIII, §§ 1(b) and 5, should be enforced and the Indenture continued in effect until the year 2055. Such "deceleration" is permitted by § 77(b) of the former Bankruptcy Act. See *In re Atlanta International Raceway, Inc.*, 513 F.2d 546, 549–50, n. 7 (5th Cir. 1975). This alternative is unworkable because the default could not be cured and the debentureholders restored to their original position without first returning the operating property to the Trustee. See *In re Madison Hotel Associates*, 749 F.2d 410, 419–21 (7th Cir.1984). To attempt to cure the default would also be a punitive treatment of the debentureholders in the case at bar, since the purpose of reorganization to continue a viable business enterprise has already been achieved without need to continue with debentures. Viable enterprises have been established in two forms, selling the operating property to the Soo Railroad

and transferring any remaining equity to the Chicago Milwaukee Corporation. Nothing would be gained under § 77(b) by requiring the debentureholders to continue receiving interest at the rate of 5% for another 70 years except to supply the Chicago Milwaukee Corporation with working capital at an unrealistic rate of interest. Thus the initial proposal of the Chicago Milwaukee Corporation is not only inequitable but also impracticable.

The beginning date for payment of interest, January 1, 1986, is provided in the form of the coupon on page 2 of the Indenture which is quoted above, p. 1007. We do not understand the Trustee nor the Chicago Milwaukee Corporation to contest this beginning date, if any interest has run or continues to run, absent Available Net Income. Yet the additional year for payment of interest is almost superfluous if the Indenture is referring only to interest due to be paid out of Available Net Income. This provision as well as the provisions for payment of interest on accelerated principal were inserted for the benefit and protection of the debentureholders in the event of a default. Such provisions are not normally applicable when the Company is operating, with or without Available Net Income, but debentureholders bargained for special benefits and protection in the event of a default, such as bankruptcy, and they are entitled to enforcement of such provisions.

The parties have referred to prior events which have taken place in this case. One such event is our decision that the Terre Haute First Mortgage bonds are entitled to interest only for the years in which there was "Available Net Income" (Order 726). However, this decision was based upon the terms of the Indenture itself, which did not include an acceleration clause similar to that found in Article XI here. Hence that interest was "contingent" whereas the interest payable to the debentureholders is "fixed" by Article XI.

On the other hand, the debentureholders' Protective Committee argues that in 1983 the Trustee offered to retire their holdings with continuing interest beginning January 1, 1976, thus ignoring the Available Net

Income provision. This was also provided in the 1983 Plan (¶ 2.5(b)(4)(a). Since the Trustee would hardly be expected to pay off a class of unsecured creditors in an amount which greatly exceeded what was due under their Indenture, we find that this offer constitutes something in the nature of an admission. It is not binding, of course, because we held that it could not be tendered over the objections of the United States Department of Transportation. On the other hand, the offer does have some persuasive weight concerning the proper interpretation and application of the Indenture.

■ Since interest beginning January 1, 1976 at the rate of 5% constitutes a fixed claim, it should itself draw interest under § 5.4 of the Plan. It is true that this constitutes "interest on interest," but it also constitutes interest on a claim. *Debentureholders Protective Committee v. Continental Investment Corp.*, 679 F.2d 264 (1st Cir.1982), *cert. denied*, 459 U.S. 814, 103 S.Ct. 192, 74 L.Ed.2d 155 (1982). We see no force to the Trustee's argument to the contrary, although we agree that the interest should not be compounded. Interest begins when a claim is "liquidated" under § 5.3 and runs until the distribution date in the case of claims that are paid by then, or until the date of payment in the case of other claims. The term "liquidated" is not defined in the Plan, but if the claims are not paid before the consummation date, cash or cash equivalents are to be deposited in a "segregated account."

The debentureholders' Committee contends that interest earned on any segregated account should not be paid to the Reorganized Company as provided in § 5.7 of the 1985 Plan. We disagree, because the plan will be modified in accordance with this opinion to give fair and equitable treatment to the debentureholders. That being the case, they have the alternative of taking payment under the Plan or litigating it further. We do not intend to encourage such litigation at the expense of the shareholders. Hence we see no reason to transfer a potential benefit to the debentureholders who are being treated fairly and equitably without it.

Finally, the Debentureholders' Committee, supported by the Indenture Trustee, contend that interest payments to them should be at a fair and equitable rate. The Committee has introduced evidence that this rate would be somewhere between 15% and 18%, with compounding, on the dual theory that a 5% rate is not equitable and that the Trustee's estate has been earning interest of at least 15% to 18% on escrowed funds. The Committee argues that the stockholders will therefore obtain the benefit of higher interest earnings than they will be paying to the debentureholders and that the estate is well able to transfer this windfall to the latter group of creditors.

■ This argument overlooks the fact that shareholders are entitled to whatever the estate can earn over and above a fair and equitable distribution to the creditors. More importantly, the debentureholders ignore the fact that their claim is based upon a written document which provides for interest at the rate of 5% and that contract, when applied as we have above, results in what we find to be a fair and equitable rate of return for the debentureholders beginning January 1, 1976. Interest payments beginning with that year will total almost 55% of the principal, with a decreasing rate for each year thereafter. The average will be something in the vicinity of 27% simple interest on the principal amount of the debentures, plus interest on the claims.

To award the debentureholders a rate considerably higher than that awarded other unsecured creditors would be inequitable to the latter group who will only receive interest from the date of liquidation of their claims. The rate which has been provided for since October 1, 1982 in 28 U.S.C. § 1961 has varied between 17.26% in December 1977 and 9.17% in February 1985. A simple calculation satisfies us that this would be an exorbitant windfall for the debentureholders. Of course § 1961 does not specifically apply to § 77(b) reorganizations, but it is one alternative which has been suggested by the debentureholders.

Since the debentureholders are to be paid in full in accordance with the Indenture, a

vote is not required by ¶ 77(e)(¶ 2)(24). No other creditors have made such a request.

Therefore, the objections of the Debentureholders Protective Committee and of the Indenture Trustee to the Trustee's 1985 Plan of Reorganization are sustained in part and overruled in part. The Trustee is ordered to serve and file an order amending the Plan in accordance with the foregoing decision, agreed to in form to the extent possible, at an early date.